NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0675n.06
Filed: September 14, 2007

No. 06-5270

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DANNY R. JONES, | ) | |
|     *Plaintiff-Appellant,* | ) | |
| | ) | |
| v. | ) | On Appeal from the United |
| | ) | States District Court for the |
| MIKE JOHANNS, in his official capacity as | ) | Middle District of Tennessee |
| Secretary of the United States Department of | ) | |
| Agriculture, | ) | |
|     *Defendant-Appellee.* | ) | |

_____/

Before: ROGERS, COOK, Circuit Judges; and O'MALLEY, District Judge.[*]

*O'MALLEY, J.* Plaintiff-Appellant Danny Jones ("Jones") appeals the district court's grant

of summary judgment in favor of Defendant-Appellee Mike Johanns, the Secretary of the United

States Department of Agriculture ("USDA") ("Appellee"),[1] on Jones's claims for discrimination and

retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Jones, an

African-American male, is an employee of the Natural Resource Conservation Service ("NRCS"),

an agency of the USDA. He alleges that he was the subject of racial discrimination and unlawful

---

[*]The Honorable Kathleen O'Malley, United States District Judge for the Northern District
of Ohio, sitting by designation.

[1]At the time the complaint was filed in this case, Ann Veneman was the Secretary of the
Department of Agriculture and, accordingly, was named as the defendant in this case. Since
then, Mike Johanns has succeeded Veneman in that post. The district court automatically
substituted Mike Johanns for Ann Veneman as the properly named officeholder pursuant to Fed.
R. Civ. P. 25(d). To the extent that the parties erroneously named Veneman as a party to this
appeal, we also recognize the automatic substitution of a successor officeholder pursuant to Fed.
R. App. P. 43(c)(2).

retaliation when he was laterally transferred to a new position within the NRCS, and that he was again the subject of unlawful retaliation when he was sent three threatening letters from one of his superiors after engaging in further EEO activity. The district court granted summary judgment in favor of Appellee on the grounds that Jones did not demonstrate that the Appellee's legitimate, non-discriminatory reasons for their actions were pretextual, and that the letters from Jones's superior did not constitute an "adverse employment action" for purposes of a Title VII retaliation claim. For the reasons stated below, we **AFFIRM** the decision of the district court, though only after applying the new standard announced by the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006) with respect to the "adverse action" component of Jones's retaliation claim.

I.      **BACKGROUND**

Jones began working for the NRCS on a part-time basis in summers starting in 1982, then became a full time employee with the agency in 1987. In December 1991, Jones became the District Conservationist for Cannon County, Tennessee. This position was ranked as a level GS-9[2] position and was located twenty-one miles from Jones's home in Murfreesboro, Tennessee. Among other things, his duties and responsibilities as a District Conservationist included directing field office operations, initiating activities to carry out an effective conservation program in Cannon County, and providing conservation-related advice to 1,600 area landowners.

Jones's direct supervisor was Larry Robeson. Jones's second-line supervisor was Paul Fulks, the Area Conservationist for several counties in Tennessee, and Jones's third-line supervisor was

---

[2]"GS" refers to the General Schedule, the federal government's pay scale covering most white-collar civilian Federal employees.

James Ford, the State Conservationist for the State of Tennessee. Robeson and Fulks are Caucasian, and Ford is African-American.

In March and April 1998, Jones was involved in several disputes or problems in connection with his work. One dispute occurred between Jones and a State employee as to what kind of permit, if any, was needed for a stream crossing over a landowner's farm. Another was a problem in which a landowner with whom Jones was working began digging a pond on his farm that did not comport with the area engineer's design approval, a problem that resulted in conservation funding being delivered late to the landowner. In another incident, Jones failed to make alternative travel arrangements for high school students to attend an agricultural competition called Envirothon, or to even notify them that he could not take them as planned. During this time, Jones had several meetings with Fulks or Robeson, or both, regarding some of these incidents as well as additional problems Jones was having with either State employees or his supervisors.

On June 30, 1998, Ford, the Tennessee State Conservationist, called a meeting with Jones in which he offered Jones a lateral transfer to a position as a Geographical Information Systems Specialist in Lewisburg, Tennessee. The new position was also ranked as a level GS-9 position, in the same series, and carried no loss of salary. Jones declined the offer in July 1998, citing the lack of promotional potential in the new position as well as the increased commute the job would require -- a total commute of forty-four miles from his home. Ford then told Jones that Ford was planning to "direct reassign" Jones to Lewisburg because he felt that Jones was ineffective in his current position. On August 4, 1998, Jones again met with Ford about his reassignment, and Ford told him that "the relationships in Cannon County are not good. And we need to build on your strengths and not focus on your weaknesses." (JA 657.)

Despite his protest, Jones was officially informed, via an August 27, 1998 letter from Ford, that he would be reassigned to Lewisburg, effective October 11, 1998. Two days later, on August 29, 1998, Jones filed an informal EEO complaint, contending that the reassignment was racially motivated. After his transfer, on October 31, 1998, Jones filed a formal EEO complaint, which alleged that his transfer constituted both racial discrimination and reprisal for his prior EEO activity.[3]

Ford's August 27, 1998 letter detailing Jones's reassignment stated a number of reasons for his transfer to Lewisburg, including nine complaints about his work as a District Conservationist. Those reasons included the incidents and problems that occurred in March and April 1998, as well as issues involving Jones's causing a misunderstanding in planning a conservation tour, failing to follow up on an idea regarding application for a lime spreader to benefit landowners, lack of professionalism at a state conservation meeting, inappropriate remarks on a radio show, and failure to show responsibility for improving any problems.

Following his filing of a formal EEO complaint regarding his claims of discrimination and reprisal, Jones received three letters from Ford, the last of which he characterizes as a letter of "reprimand." (JA 740.) Ford sent the letters on January 12, 1999, April 19, 2001, and April 29, 2002. Each letter requested that Jones refrain from contacting employees regarding his pending EEO claims. In the final letter, Ford indicated that he had been advised by two NRCS employees that Jones had contacted them about his EEO complaint, and that they expressed their discomfort at being approached. The letter also directed Jones "to immediately stop attempting to discuss your appeal

---

[3]At the time when Ford first informed Jones of his impending reassignment, Jones's prior EEO activity consisted of an informal non-election complaint in April 1997, which did not go to the formal stage of proceedings, as well as another informal complaint in November 1997, this time regarding his 1997 performance rating process.

and related witness statements with anyone during business hours or in government offices," and that failure to stop "may result in official disciplinary action." (JA 238.) Jones claims that these letters contained false accusations, and that he had approached the employees to ask forgiveness.

The EEOC investigated Jones's claims that the transfer was discriminatory and retaliatory and that the letters from Ford were retaliatory. On July 2, 2004, the agency issued a final determination finding that Jones's transfer was neither discriminatory nor retaliatory. On July 19, 2004, the agency issued a final determination noting that the letters did not evidence retaliation on the part of Appellee. Thereafter, Jones filed a complaint in district court on September 30, 2004. On December 14, 2005, the district court granted Appellee's motion for summary judgment. Jones filed a timely notice of appeal.

## II.     ANALYSIS

### A.     Standard of Review

This court reviews a district court's award of summary judgment *de novo*. *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996). The review "is governed by the same general standards employed by the district court originally." *Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 448 (6th Cir. 1993). That is, summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could

5

reasonably find for the plaintiff." *Id*. at 252.

B.      **Law and Discussion**

1.      **Jones's Reassignment Did Not Constitute Discrimination or Retaliation**

In analyzing Jones's complaints of both discrimination and retaliation, the court must apply

the *McDonnell Douglas* framework, which first requires a plaintiff to establish a *prima facie* case

of each of his claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Talley v.*

*Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995). To make out a *prima facie* case of

discrimination, a plaintiff must establish that: (1) he is a member of a protected group; (2) he was

qualified for the position; (3) he was subject to an adverse employment decision; and (4) he was

treated differently than similarly situated non-protected employees. *Newman v. Federal Exp. Corp.*,

266 F.3d 401, 406 (6th Cir. 2001). In order to establish a *prima facie* case of retaliation, a plaintiff

must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such

protected activity was known by the defendant; (3) thereafter, the defendant took an action that was

"materially adverse" to the plaintiff; and (4) a causal connection existed between the protected

activity and the materially adverse action. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th

Cir. 2003); *see also Burlington N.*, 126 S.Ct. at 2415 (modifying the third element to require a

"materially adverse action" rather than an "adverse employment action").

Once the plaintiff establishes a *prima facie* case for either a discrimination or retaliation

claim, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the

adverse action, after which the plaintiff must demonstrate that the proffered reason was a mere

pretext for what was actually an improper motive. *Talley*, 61 F.3d at 1246 (discrimination claim);

*Abbott*, 348 F.3d at 542 (retaliation claim). The ultimate burden of persuasion always remains with

6

the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

In this case, the district court found that, even assuming that Jones could establish a *prima facie* claim of either discrimination or retaliation, he failed to offer evidence that Appellee's legitimate, non-discriminatory reasons were pretextual. The district court, therefore, concluded that Jones's claims relating to his reassignment failed as a matter of law.

Appellee offered several legitimate, non-discriminatory reasons for Jones's lateral transfer in the reassignment letter, including the incidents and problems that occurred in March and April 1998, as well as issues involving Jones causing a misunderstanding in planning a conservation tour, failing to follow up on an idea regarding application for a lime spreader to benefit landowners, lack of professionalism at a state conservation meeting, inappropriate remarks on a radio show, and failure to show responsibility for improving any problems. The proffer of these legitimate, non-discriminatory reasons shifts the burden to Jones to establish that they are mere pretext for discriminatory motives. Jones can meet his burden if he can show that the reasons (1) have no basis in fact, (2) did not actually motivate the challenged conduct, or (3) are insufficient to explain the challenged conduct. *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003).

Jones challenges Appellee's proffered reasons on several grounds: that he is not responsible for many of the allegations in the reassignment letter, and, therefore, they have "no basis in fact;" that Ford is "dishonest" because he did not base his reasons on first hand knowledge and did not remember the specifics of each allegation when asked about them at his deposition; that Appellee's failure to institute formal personnel procedures to reassign him demonstrates discriminatory motivation; and that he was qualified because he received "fully successful" ratings in all of his relevant reviews.

7

The district court correctly dismissed Jones's arguments and found that he failed to meet his burden. We reiterate or add only a few points to the district court's analysis. First, simply because Jones claims he is not responsible for some of the allegations does not mean that they have "no basis in fact." For example, Jones does not deny that confusion or misunderstandings occurred with regard to certain conservation projects, he merely argues that those problems should be blamed on State conservation employees, his own supervisors, or a landowner who began digging a pond prematurely. It is the *fact* of these problems, however, not the cause of them, that led Appellees to believe that Jones was ineffective as a District Conservationist. In addition, Jones does not deny that he failed to make other arrangements, or contact anyone, to take high school students to Envirothon; he merely explains that the event was rescheduled when he was on scheduled leave. It is also noteworthy that, for some of the allegations, such as the failure to follow up on an application for funding, Jones offers no explanation or challenge. It cannot be said, therefore, that these reasons have no basis in fact.

Second, the argument that Ford is somehow "dishonest" because he failed to remember specific details is especially unconvincing when other witnesses, including civil engineer Denise Watkins, corroborate the allegations in the reassignment letter. It is also too exacting to require the head of a department for an entire State to have first-hand knowledge of every allegation against every employee who works beneath him; Ford necessarily has to rely on the reports of middle-line supervisors.

Third, equally unconvincing is Jones's charge that Appellee's failure to institute formal personnel proceedings demonstrates pretext. The Performance Improvement Plan ("PIP") that Jones claims should have been implemented for him is for "Performance Based Reduction in Grade and

8

Removal Actions." 5 C.F.R. § 432.104. "Removal" is defined as "involuntary separation of an employee from employment with the agency." 5 C.F.R. § 432.103. As Jones was neither reduced in grade nor terminated, Appellee was not required to follow these procedures.

Finally, the fact that Jones received a "fully successful" rating on his performance rating summary - which is a positive rating, but still two steps down from the highest rating of "outstanding" - is relevant to the element of his *prima facie* case that he was qualified for the position, not that Appellee's non-discriminatory reasons are mere pretext. In any event, as the district court noted, many of the allegations of the reassignment letter were included in Jones's performance rating summary, thus diminishing Jones's argument.

For these reasons, and the reasons stated by the district court, we find that Jones has not put forward sufficient evidence that Appellee's proffered reasons for the transfer were pretext. Accordingly, we agree that Appellee is entitled to judgment as a matter of law on Jones's claims that reassignment to the GIS position in Lewisburg constituted discrimination or retaliation.[4]

## 2. The Letters From Ford Do Not Constitute Retaliation

As indicated above, one element of a *prima facie* case of Title VII retaliation that a plaintiff must establish is that the defendant took an action that was "materially adverse" to the plaintiff. *See Burlington N.*, 126 S.Ct. at 2415. This is the only element we focus on for purposes of this analysis. The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily

---

[4]It also appears that the district court's assumption that Jones could satisfy his *prima facie* showing was generous. Indeed, it is unlikely that an exacting review of these elements would lead us to the conclusion that Jones was actually treated differently than "similarly situated" employees (because the employees he identifies simply do not appear to qualify as such), or was subjected to an "adverse employment decision" within the meaning of Title VII as interpreted by this court's precedents. Because we agree that Jones's complaint was subject to summary judgment on other grounds, we need not and do not reach these questions.

met. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

In this case, Jones argues that the letters that he received from Ford on January 12, 1999, April 19, 2001, and April 29, 2002, each of which requested that Jones refrain from contacting employees regarding his pending EEO complaint, constituted adverse actions for purposes of his retaliation claim. The district court disagreed, concluding that letters of reprimand are not sufficient to constitute adverse *employment* action unless they accompany some other consequence, such as reduction in salary or a demotion. While the district court's conclusion was likely correct at the time it was made, the Supreme Court's intervening decision in *Burlington Northern* has altered the standards by which courts are to assess whether an adverse action has occurred for purposes of a Title VII retaliation claim. *Burlington N.*, 126 S.Ct. at 2414. In *Burlington Northern*, the Court explained that "Title VII's substantive provision and its anti-retaliation provision are not coterminous. The scope of the anti-retaliation provision extends *beyond workplace-related or employment-related retaliatory acts and harm*." *Id.* at 2414 (emphasis added). Rather than demonstrating an adverse "employment" action, a Title VII plaintiff claiming retaliation "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (quotations omitted).

Applying this new standard, however, does not change the outcome. Here, Jones filed his EEO complaints on August 29, 1998 and October 31, 1998. The complained of letters were sent over the course of the next *three and a half years*. The first two letters arguably do not contain any reprimands, and certainly not any threats. They merely "request[] that you refrain from contacting any NRCS employee for information on official time." (JA 234-35.) Jones himself stated that he

did not think the first two letters were "letter[s] of warning" when he received them. (JA 739-40.) The third letter directs Jones "to immediately stop attempting to discuss your appeal and related witness statements with anyone during business hours or in government offices," and that failure to stop "may result in official disciplinary action." (JA 238.) In arguing that these letters constitute a materially adverse action, Jones argues that "the letters create a series of events. Each letter built the stress created by those preceding it."

We conclude that these letters do not constitute a materially adverse action under the *Burlington Northern* standard. These are not the types of actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 126 S.Ct. at 2415. In describing the materially adverse standard, the Supreme Court noted that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* The Court also emphasized that it referred to the reactions of a "reasonable employee" because the standard for judging harm must be objective. In this case, we think that a third letter sent over twelve months after the second and over two years after the first letter would not, for a reasonable employee, "buil[d] the stress created by those preceding it." In addition, the warning that ended the third letter was couched in relatively soft terms, that failure to follow the directive "*may* result in official disciplinary action." (JA 238) (emphasis added.) Under these circumstances, we do not find that these three letters would dissuade a reasonable employee from making or supporting a charge of discrimination.

Accordingly, we conclude that these letters do not, as a matter of law, constitute materially adverse actions, and, therefore, that Jones's claim for retaliation based on those letters must fail.

11

**III. CONCLUSION**

For the reasons articulated above, the decision of the district court is affirmed.