NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0302n.06

No. 20-5821

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 29, 2021
DEBORAH S. HUNT, Clerk

DANNY JONES,

     Plaintiff-Appellant,

v.

THOMAS VILSACK, Secretary, U.S. Department of Agriculture,

     Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

BEFORE:    GRIFFIN, WHITE, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Danny Jones filed suit alleging that his employer, the United States Department of Agriculture, violated both Title VII of the Civil Rights Act of 1964 by retaliating against him in response to claims he filed with his employer's Equal Employment Opportunity office, as well as the Rehabilitation Act of 1973 by failing to alter his working conditions to accommodate his disabilities. The district court granted the Department's motion for summary judgment. We now affirm.

## BACKGROUND

For many years, Jones has been employed as a Soil Conservationist at the United States Department of Agriculture's National Resources Conservation Service (the "Agency"). Today's suit traces back to events beginning in 2005. At the time, Lori Pittman, Jones's co-worker, reported that Jones, then employed at the Agency's Murfreesboro office, exposed himself at work. An ensuing internal investigation proved inconclusive, and no disciplinary action was taken. Jones

responded by filing a slander lawsuit against Pittman as well as an EEO complaint against the Agency, both of which alleged injury caused by Pittman's purportedly false allegations. Around this same time, Pittman contacted the Agency's EEO office to indicate that she no longer wanted to work with Jones.

In the years to come, Jones would file a host of EEO complaints against the Agency alleging retaliation for his engagement in various protected activities. Jones first alleged that the Agency, in retaliation for his initial EEO complaint and a lawsuit he had filed against the Agency, retaliated against him by encouraging Pittman to file her own EEO complaint, which resulted in a second investigation and Jones's temporary reassignment to the Agency's Nashville office. Once temporarily reassigned to Nashville, Jones filed a request for a reasonable accommodation due to his mental health conditions. When the Agency delayed responding to that request and then permanently reassigned Jones to the Nashville office, Jones alleged that those actions constituted retaliation for his accommodation request. And when Jones requested additional accommodations that were later denied in part, Jones alleged that the partial denial was further evidence of retaliation as well as unlawful discrimination on the basis of his disability. Finally, Jones also alleged retaliation when he was reassigned to a different Soil Conservationist position than the one previously held. At the close of its review, the Agency concluded that no relief was warranted as to any of Jones's EEO complaints and issued final agency decisions dismissing his claims.

Failing on these administrative fronts, Jones filed this suit. In it, he alleged that the Agency's conduct (detailed briefly above) amounted to retaliation, race discrimination (Jones is African American), and a failure to accommodate, in violation of Title VII and the Rehabilitation Act. Following discovery, the Agency moved for summary judgment on all claims. The magistrate judge recommended that the Agency's motion be granted. With respect to Jones's

retaliation claims regarding his temporary and then permanent reassignment to Nashville as well as the delay in addressing his accommodation request, the magistrate judge found that Jones failed to establish a prima facie case of retaliation due to the absence of a causal connection between his protected activity and the purportedly adverse actions taken against him. Likewise, as to his retaliation claim regarding the duties assigned to him following his permanent reassignment, the magistrate judge concluded that the Agency's action was not "materially adverse," as required to establish a prima facie case of retaliation under Title VII. The magistrate judge also rejected Jones's race-discrimination claims (due to a failure to exhaust) and failure-to-accommodate claims (due to the absence of a prima facie case). These latter two claims have not been pressed on appeal.

Jones submitted objections to the magistrate judge's report and recommendation. The district court disagreed with some of the magistrate judge's reasoning, but ultimately granted the Agency summary judgment on all claims. Jones's timely appeal followed.

**ANALYSIS**

Jones maintains that the district court erred in dismissing four of his retaliation claims. To establish a prima facie claim of retaliation under Title VII, Jones must show that: (1) he engaged in a protected activity; (2) the protected activity was known by the Agency; (3) the Agency took an action that was materially adverse to him; and (4) a causal connection existed between the protected activity and the materially adverse action. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). If Jones makes that showing, the burden shifts to the Agency to offer a legitimate, nonretaliatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the Agency does so, the burden shifts back to Jones "to show that the proffered reasons were not the true reasons for the employment decision, *i.e.*, that the reasons were a pretext

for retaliation." *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019) (citation omitted).

We review the district court's summary judgment decision de novo. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 447 (6th Cir. 2020). Rule 56's familiar language instructs that summary judgment is appropriate where the evidence, viewed in light most favorable to the nonmoving party, shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only where "a reasonable jury could return a verdict for the nonmoving party." *Baatz v. Columbia Gas Transmission, LLC*, 929 F.3d 767, 771 (6th Cir. 2019) (citation omitted).

I.

Jones first asserts that the district court erred in dismissing three of his retaliation claims due to his failure to satisfy the causation element of his prima facie case. To satisfy that element, Jones must demonstrate a causal connection between his protected activity (filing EEO complaints) and a materially adverse action (of which Jones alleges many). *See, e.g.*, *Hubbell*, 933 F.3d at 568. Jones's claims fail unless he can show but-for causation, that is, "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010) ("[P]laintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse employment action] would not have occurred but for his engagement in protected activity."). An intervening cause between the protected activity and an adverse action dispels any inference of causation. *Kenney*, 965 F.3d at 450 (citing *Kuhn v. Washtenaw County*, 709 F.3d 612, 628 (6th Cir. 2013)); *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 471–72 (6th Cir. 2012) (finding

that the plaintiff failed to demonstrate a causal connection because his decision to leave the work site was an intervening event). One factor relevant to determining whether causation is satisfied in this setting is whether an adverse action occurs close in time to the employer learning of a protected activity, what we refer to in our cases as "temporal proximity." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008); *Kenney*, 695 F.3d at 449. Generally speaking, the more time that elapses between the employer learning of an employee's protected activity and the subsequent adverse employment action, the less temporal proximity between those acts, thereby requiring more evidence of retaliatory motive from the employee. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664–65 (6th Cir. 2020); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 650 (6th Cir. 2015).

1. *Second Investigation and Temporary Reassignment*. Jones asserts that, following his EEO filing, the Agency retaliated against him by "encouraging Lori Pittman to accuse him of sexual harassment a second time," which sparked an investigation and Jones's temporary relocation to the Nashville office. Jones's evidence, however, fails to establish a causal connection between his protected conduct and the Agency's ensuing actions.

Following the 2005 investigation into Jones's alleged misconduct, Jones and Pittman returned to the Murfreesboro office for approximately six months. Although no major incident occurred during those six months, the two both testified to experiencing disruptions at work following Pittman's allegations against Jones. Jones then filed a slander lawsuit against Pittman. That suit prompted Pittman to file an informal EEO complaint alleging sexual harassment and a hostile work environment, in which she requested that she no longer be required to work with Jones. The Agency in turn notified Jones that because he had been named an "alleged harasser," the Agency was initiating an investigation, with Jones being temporarily relocated to the Nashville

5

office. On this record, Pittman's EEO complaint—her first time contacting the EEO after her initial exposure allegation against Jones—was an intervening, legitimate reason for the Agency to investigate Jones and temporarily relocate him. That intervening cause dooms Jones's theory of causation. *See, e.g.*, *Kenney*, 965 F.3d at 450; *Kuhn*, 709 F.3d at 628; *Wasek*, 682 F.3d at 472.

Resisting this conclusion, Jones points to a separate federal lawsuit he filed against the Agency, one that had been pending for well over a year at the time the Agency temporarily relocated Jones. *Jones v. Johanns*, No. 3:04-0883, 2005 WL 8175147 (M.D. Tenn. Dec. 15, 2005), *aff'd*, 264 F. App'x 463 (6th Cir. 2007). Jones believes that the Agency used Pittman as a means by which to retaliate against Jones for this federal lawsuit. But Jones provides no evidence to support his accusation. And Pittman denied that anyone from the Agency encouraged her to file a complaint against Jones. All told, lacking evidence to support a causal connection between his protected activity and the alleged adverse employment action, Jones fails to establish a prima facie case of retaliation.

2. *Delay in Reasonable Accommodation.* Jones next argues that the district court erred in dismissing his claim that the Agency retaliated against him by improperly delaying action on (and ultimately denying in part) his two requests for a reasonable accommodation. As to the first request, in October 2006, approximately seven months into his temporary reassignment to Nashville, Jones verbally sought from then-State Conservationist James Ford an accommodation to work from home two days a week due to his depression, paranoia, and anxiety. In the district court, Jones described the Agency's delay in accommodating him as evidence of race discrimination (in violation of Title VII) as well as a failure to accommodate (in violation of the Rehabilitation Act). On appeal, however, Jones characterizes the Agency's delayed action solely as a Title VII retaliation claim, asserting that the delay in honoring his request for accommodation

was done in retaliation for his earlier EEO filing. Because Jones abandoned his race-based and failure-to-accommodate claims on appeal, and because he failed to preserve in the district court the theory he presses today, Jones forfeited any claim regarding a delay in honoring his request for an accommodation. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 796 (6th Cir. 2019); *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004).

In any event, Jones fails to make a prima facie showing of retaliation. Jones characterizes his verbal request to Ford to work from home as a formal request to the Agency for a reasonable accommodation. Ford, however, viewed the request simply as part of ongoing discussions regarding Jones's EEO complaint, and thus did not act on the request. In January 2007, following Ford's retirement, Jones followed up with the Agency. The Agency soon discovered that Ford arguably had misunderstood Jones's request, and that his direct supervisor was unaware of the request. The Agency arranged to meet with Jones that same day to discuss the matter. Jones provided the Agency with a letter from his physician supporting his request. After informing Jones that the letter did not provide enough information for the Agency to make a decision, the Agency directed Jones to submit additional medical documentation by March 16, 2007. When Jones failed to do so, the Agency denied his request. Yet upon later receiving additional information from Jones documenting his disability, the Agency approved his request to work from home two days a week.

Temporal proximity considerations foreclose Jones's argument. Jones amended his EEO complaint in March 2006 yet did not make his accommodation request until some seven months later, and seven months after his temporary assignment to Nashville. That length of time between an alleged adverse action and protected activity is too long to support an inference of causation. *See Kenney*, 965 F.3d at 449 (concluding that "a roughly 75-day delay between her protected

7

activity and an adverse employment action is not, standing alone, a convincing case for proving causation"); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (holding a four-month period was insufficient to establish a prima facie case of retaliation). Jones offers no other causation theory. And although Jones seemingly followed up on his initial verbal request by sending an email to Ford, it was not until January 2007 that he contacted anyone else. Once the Agency learned of the miscommunication, it met with Jones that day, and later approved his request. We thus see no causal connection between Jones's EEO filing and any delay in approving his request.

Jones appears to argue that the Agency also retaliated against him by denying his separate request for a windowed workspace and Bose noise-cancelling headphones. But Jones forfeited this argument, not once, but twice. In his amended complaint, Jones's retaliation claim relating to his accommodations request made no mention of the denial of a window or headphones as evidence of retaliation, an approach which he repeated in response to the Agency's summary judgment motion. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). Nor did Jones object to the magistrate judge's conclusion that Jones forfeited these claims, a forfeiture in its own right. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985) (requiring litigants to file specific and timely objections to a magistrate's report and recommendation to preserve the right to appeal a subsequent order of the district court adopting that report); *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) (describing a failure to object to a magistrate's report and recommendation as a forfeiture). To the extent Jones argues on appeal that the denial of his request for a window and noise-cancelling headphones constitute a failure to accommodate his disability, he forfeited that argument as well, by both not raising those accommodation denials in response to the Agency's summary judgment

8

motion, and by failing to object to the magistrate judge's conclusion that Jones did not establish a prima facie case.

3. *Permanent Reassignment.* Jones also alleges that his permanent reassignment to the Nashville office was a retaliatory measure in response to his EEO conduct. By way of background, Jones's slander suit prompted Pittman to initiate an EEO action, which prompted Jones to file an amended EEO complaint. Twenty months later, Jones was permanently reassigned to the Nashville office. As the magistrate judge opined, temporal proximity considerations mitigated a finding of a causal connection between the filing of Jones's first EEO complaint and his permanent reassignment, given the gap between the two. *See Kenney*, 965 F.3d at 450. Without additional evidence supporting a retaliatory motive on the part of the Agency, Jones fails to establish a causal connection. And even had he done so, the report recommending (and the Agency's subsequent decision) that Jones and Pittman not be in the same office was issued around this same time—an intervening cause (and a legitimate, nonretaliatory reason) justifying the Agency's decision to permanently reassign Jones. *See id.*

## II.

Finally, Jones argues that the district court erred in concluding that he failed to demonstrate pretext to support his retaliation claim centered on the Agency's decision to reassign him to a different Soil Conservationist position. The district court held that Jones had established a prima facie case of retaliation, yet had not established that the decision to reassign him was pretextual.

Roughly a year into Jones's permanent reassignment to the Nashville office, the Agency moved Jones from the position of Soil Conservationist on the Geographical Information System staff to the position of Soil Conservationist on the Ecological Sciences staff. Jones claims that this change was made in retaliation for him filing a third EEO complaint to address his supervisor's

alleged failure to provide reasonable accommodations. As evidenced by the Notification of Personnel Action, however, this "lateral reassignment" of position titles did not affect Jones's pay plan, occupation code, grade, step, salary, or pay basis. In fact, the change largely appears to have been in name only: Jones remained a Soil Conservationist, and was simply reassigned from that position within the Geographical Information System staff to the same position within the Ecological Sciences and Planning staff. Because we agree with the district court that Jones failed to meet his burden to establish pretext, we need not consider whether this reassignment constituted a materially adverse employment action sufficient to support a prima facie claim, which, in and of itself, is debatable.

The Agency's proffered legitimate, nonretaliatory reason for Jones's change in position title was that the Tennessee branch of the Agency underwent a reorganization resulting in a vacancy in a Soil Conservationist position in Nashville. The Agency further explained that since Jones had already transferred to the Nashville office and had the requisite expertise to fill the position, the Agency was best served by having Jones fill this vacancy (and to have Pittman seemingly fill Jones's prior Soil Conservationist position in Murfreesboro). The Agency also offered evidence of its practice of reassigning other employees to suit the Agency's needs.

Jones has not presented a genuine dispute of material fact that these reasons are pretextual. Rather, Jones contends that Pittman's motive in making the 2005 allegation against Jones was that she wanted his job (which she seemingly got) and that the eventual reassignment of job duties was the culmination of a three-year conspiracy to achieve that end. And while Jones correctly notes that the district court conflated the Agency's proffered reasons for Jones's permanent relocation to the Nashville office with its reasons for Jones's reassignment of position, Jones does not point to any evidence that the asserted reasons for his position reassignment were untrue, were

insufficient to motivate the reassignment, or did not actually motivate the reassignment. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). The district court, therefore, properly dismissed this claim.

## CONCLUSION

For these reasons, we affirm the judgment of the district court.