IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-31069
Summary Calendar

CAROL STEWART KING

Plaintiff-Appellant

V.

STATE OF LOUISIANA; DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONS; ELAYN HUNT CORRECTIONAL CENTER; LOUISIANA
STATE PENITENTIARY; C MARTIN LENSING; THOMAS DESPORTE;
CORNEL HUBERT; MARIANA LEGER; ROBERT ABEL, BURL CAIN;
MATT REED; WAYNE EDMISTEN

Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:05-CV-106

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Carol Stewart King purports to raise 71 points of error related to
numerous discovery rulings and the grant of summary judgment in connection
with her lawsuit claiming that eleven defendants violated her rights under Title

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, the United States and Louisiana Constitutions, and unnamed "statutes and laws of the State of Louisiana and the United States." Finding absolutely no merit in her claims, we affirm the rulings of the district court dismissing her federal claims and remanding the remaining state claims.

I.

King was employed from February 7, 1996 through August 9, 2001 as a licensed practical nurse ("LPN") at the Elayn Hunt Correctional Center ("EHCC") in Louisiana. She then transferred to the Louisiana State Prison ("LSP") at Angola, where she worked until March 1, 2004.

On October 4, 1999, King filed suit against the State of Louisiana, the Department of Public Safety and Corrections ("DOC"), and EHCC, seeking relief and damages under Title VII of the Civil Rights Act for alleged gender and race-based discrimination that occurred at EHCC from 1997 to 1998. Following a jury verdict against those defendants in January of 2001, the district court granted the defendants' motion for judgment as a matter of law, finding that the evidence at trial did not satisfy the requirements of Title VII. Final judgment was rendered in favor of the defendants, and King failed to appeal.

King filed an EEOC charge on July 16, 2002, and the instant litigation began with the filing of three identical lawsuits in various Louisiana state courts in August and September of 2002. Each complaint charged that King was the victim of unlawful gender and race-based discrimination and retaliation under 42 U.S.C. § 1983 and unidentified "laws of the State of Louisiana." Specifically, on August 9, 2002, she sued the State of Louisiana and DOC, on September 18, 2002, she added defendants EHCC, Lensing, Desporte, Leger, Hubert, and Abel (the "EHCC defendants"), and on September 25, 2002, King added defendants LSP, Cain, Reed, and Edmisten (the "LSP defendants").

The three Louisiana cases were removed to federal court, consolidated, and King was permitted to file a consolidated federal complaint in May of 2003 and a final "Amending and Supplemental Complaint With Jury Demand," on August 25, 2005. In that final document, King added a number of claims, charging all eleven defendants with violations of "Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, their applicable sections and subsections as amended; 42 U.S.C. 2000e, et seq., . . . 42 U.S.C. § 1981[,] . . . 42 U.S.C. § 1983, the Constitution of the United States of America, the Constitution of the State of Louisiana[, and] the employment, contract and tort laws of the State of Louisiana." King lists a series of largely unintelligible grievances she contends demonstrated discriminatory practices and retaliatory actions purportedly committed due to her race, gender, her prior federal lawsuit, and her cooperation with an investigation into inmate abuse at EHCC.

King's allegations against EHCC and its employees Lensing, Desporte, Hubert, Abel, and Leger, largely arise from a February 13, 2001 disciplinary meeting in which Desporte, the assistant warden at EHCC, and Hubert, a deputy warden, met with King to discuss allegedly false testimony provided by King in connection with a lawsuit charging mistreatment of individuals at the facility. Desporte and Hubert concluded that King had presented materially false statements to her supervisors, and had failed to report mistreatment of patients. As a result of this determination, Assistant Warden Abel on June 15, 2001 proposed to demote King and decrease her pay, and Deputy Warden Leger affirmed the decision on June 20, 2001. Warden Lensing upheld the finding and approved the penalty on July 2, 2001, and King's request for an additional appeal hearing was denied by letter dated July 25, 2001. This correspondence confirmed that King would be demoted effective October 1, 2001. Her salary would also be reduced.

On August 9, 2001, King transferred back to LSP. King claimed that she chose this transfer rather than "endure the intentional infliction of emotional distress, and mental anguish and the unfair, retaliatory and discriminatory treatment meted out by the named and other unnamed employees of EHCC." King left EHCC before her demotion was effective, and prior to her receipt of a September 20, 2001 confirmation letter.

At LSP, King claims that she informed her new supervisor, Edmisten, of her testimony and proposed demotion around September of 2001. King contends that Edmisten became unfriendly toward her. Less than a month thereafter, Edmisten allegedly threatened to place King on probationary status because of a complaint lodged by Reed, who served as a security officer at LSP. King claims that Reed was rude to her and improperly ordered her to dispose of empty pill packets, and that this was sufficiently upsetting to require her to be placed on medical leave for three weeks.[1] King also claims as discrimination or retaliation an average evaluation she received in 2003,[2] and challenges the 2003 effectuation of her demotion, resulting in her salary being reduced to repay amounts paid from 2001 through 2003. King states that she was "constructively

---

[1] We specifically note that King explains her sole reason for involving Reed in this protracted litigation, and alleging federal, state, and constitutional violations against him, as follows:

> Ms. King sued Sergeant Reed, because he created an incident in which he approached Ms. King, while she was carrying out her duties on a cellblock and ordered her to take and dispose of empty pill packs which he held. Ms. King declined and stated that she was not on the cellblock for that purpose. Sergeant Reed then turned to Jeanette Mayeaux, a similarly situated white LPN, who walked upon the incident and he instructed her to tell Ms. King to follow his instructions. Ms. Mayeaux declined and went about her nursing duties which included getting rid of the empty pill packs.

[2] Although King urges that her September 2003 evaluation was poor, her overall rating was "meets requirements," and her numerical score was 3.00, which was in the "meets requirements zone" of between 2.50 and 3.49. In 2002, King successfully challenged a performance review grade of 3.00, but, curiously, chose not to do so during the pendency of this case in September of 2003.

4

discharged" in February, 2004, following four months of sick and Family Medical Leave taken due to the stress brought on by her mediocre work evaluation.

The procedural history of this case is lengthy, and generally not pertinent to resolution of this appeal. It is sufficient to state that mediation was unsuccessful, a motion to strike items improperly included in King's final complaint was granted, and there were a number of discovery disputes throughout the litigation which culminated in the magistrate awarding costs and attorney's fees against King. The district court eventually adopted the magistrate judge's grant of summary judgment against King, dismissing all federal claims and remanding all state claims to the Louisiana court.

Applying de novo review, we affirm the district court's grant of summary judgment, holding that the claims against all defendants fail to create material issues of fact.[3]

II.

A.   Standard of Review

We review a grant of summary judgment de novo, under the same standard applied by the district court. City of Shoreacres v. Waterworth, 420 F.3d 440, 445 (5th Cir. 2005) (citing Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir. 2002)). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Terrebonne Parish Sch. Bd., 310 F.3d at 877. All well-pled facts are viewed in the light most favorable to the non-movant and all reasonable doubts about the facts should be resolved in favor of the non-moving party. Id. The district court's discovery

---

[3] We do not address each of King's 71 issues because many challenge immaterial questions of fact, or constitute little more than rhetorical questions. All such questions become moot based on our affirmance of the district court's grant of summary judgment and our determination that the discovery rulings were not an abuse of discretion.

rulings are considered under an abuse of discretion standard. Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006).

### B.    Prescription

Although 42 U.S.C. §§ 1981 and 1983 and corresponding constitutional claims are not subject to specific federal statutes of limitations, we borrow the forum state's general personal injury limitations period. Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001).[4] In Louisiana, the applicable limitations period is one year. Johnson v. Crown Enters., Inc., 398 F.3d 339, 341 (5th Cir. 2005); LA. CIV. CODE ANN. art. 3492 (1992). Federal law determines the time at which the cause of action accrues, and dictates that the statute of limitations here begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Piotrowski, 237 F.3d at 576 (quoting Russell v. Bd. of Trustees, 968 F.3d 489, 493 (5th Cir. 1992)). "Actual knowledge is not required if the circumstances would lead a reasonable person to investigate further." Id. (citation and internal quotation marks omitted).

A Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged; otherwise, her claims are prescribed. Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)).

Like the district court, we conclude that many of King's claims arising under 42 U.S.C. §§ 1981 and 1983 and Title VII are barred by the applicable limitations periods. King's allegations against EHCC and the individual EHCC defendants (Lensing, Desporte, Leger, Hubert, and Abel) were brought by a

---

[4] Section 1981's prohibitions against a private actor's racial discrimination are properly asserted against a state actor under 42 U.S.C. § 1983. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Oden v. Oktibbeha County, Miss., 246 F.3d 458, 463-64 (5th Cir. 2001).

September 18, 2002 lawsuit. Other than a claim regarding the failure to receive a 1997 pay increase, which we agree is barred by res judicata, all concern disciplinary actions the EHCC defendants took culminating in a demotion and salary decrease that was conveyed to King by letter dated July 25, 2001. Although King argues that the conduct was only effective upon the confirmation letter she received on September 20, 2001, the Supreme Court has made clear that, for statute of limitations purposes, "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980) (quoting Abramson v. Univ. of Haw., 594 F.2d 202, 209 (1979)) (emphasis in original). Here, King alleges that EHCC and the EHCC defendants discriminated against her by proposing to demote her on account of race, gender, or in retaliation for her previous lawsuit or deposition testimony, quashing her free speech rights, concocting two unspecified disciplinary charges, and providing compensatory leave rather than wages. However, all such conduct was concluded and known to King well before September 18, 2001. King concedes as much by claiming her August 9, 2001 transfer to be compelled by the "retaliatory and discriminatory treatment" and "harassment the wardens were exacting under the color of law" at EHCC. Accordingly, all claims against them are prescribed.[5]

King's remaining claims arising under Title VII, section 1981, and section 1983 are alleged against Louisiana, the DOC, LSP, Cain, Reed, and Edmisten

---

[5] King's reliance on the Louisiana theory of "contra non valentem" is unavailing, since that theory only delays the commencement of the prescriptive period "where the cause of action is not known or reasonably knowable by the plaintiff." Cole v. Celotex Corp., 620 So.2d 1154, 1156-57 (La. 1993).

for conduct that occurred after her August, 2001 transfer. Taken in the light most favorable to King, they are not prescribed. They are addressed below.[6]

### C.    Qualified Immunity

It is well-settled that a section 1981 or 1983 suit against a state official in his or her official capacity is a suit against the state itself; accordingly, the district court correctly dismissed the actions against all defendants sued in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Oden, 246 F.3d at 464. In addition, the Title VII claims against the defendants were properly dismissed, because "a party may not maintain a suit against both an employer and its agent under Title VII." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999); See also Ackel v. Nat'l Commc'ns Inc., 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("[i]ndividuals are not liable under Title VII in either their individual or official capacity"). Therefore, there is no official liability as to Reed, Edmisten, or Cain.[7]

Qualified immunity applies to a state official sued in his or her individual capacity unless the facts alleged show that the official's conduct violated a constitutional right and that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). For there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions

---

[6] The district court also dismissed the claims against Louisiana and the DOC because of the statute of limitations; however, taken in a light most favorable to King, there may be claims against these entities for conduct occurring after August 9, 2001.

[7] Because Lensing, Desporte, Leger, Hubert, and Abel were sued outside the proper limitations period, we do not consider whether qualified immunity applies to the claims against them.

of that person and the constitutional right sought to be redressed. Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983).

Here, the allegations against Cain, Edmisten, and Reed fail to overcome qualified immunity. The sole claim against Cain is that he signed a 2003 letter instituting the 2001 demotion and requesting the repayment of amounts overpaid since that time. Although King sets forth in argument a number of immaterial issues regarding Cain,[8] none of these arguments remotely suggest that Cain had personal involvement in the alleged constitutional deprivations, or even specify which constitutional rights Cain violated. Indeed, Cain had apparently never met King, and it is not clear from the summary judgment evidence that he was even aware of the 1999 lawsuit or King's prior testimony. In sum, there are no allegations and no summary judgment evidence to overcome Cain's claim of qualified immunity.

The allegations against Reed and Edmisten similarly fail to set forth any constitutional violation. The claims against Reed – that he was rude to King, asked her to dispose of some empty pill packets, and complained to her supervisor when she was rude to him – do not constitute clearly unlawful deprivations of constitutional rights. Similarly, the allegations of wrongdoing by Edmisten consist solely of King's belief that he was unfriendly toward her, that he reprimanded her in front of another employee, and that he threatened to place her on probation. There is not the faintest hint of unconstitutional motive or conduct in these allegations, even if proved true. In sum, there is no summary judgment evidence that the individual defendants committed a

---

[8] For example, King claims: (1) "Genuine issues of material fact exit [sic] when the district court found that wardens, Lensing and Cain, were not personally involved," and (2) "A genuine issue of material fact exists as to whether Warden Cain and LSP staff were sufficiently notified by Ms. King about the pending adverse employment actions when she transferred to LSP."

constitutional violation. Accordingly, qualified immunity applies to all individual defendants, and the claims against them were properly dismissed.

D.     No Evidence of Discrimination

After dismissal for statutes of limitations and qualified immunity, there remain claims against Louisiana, the DOC, and LSP under Title VII and section 1983.[9] Section 1983 and Title VII are "parallel causes of action." Cervantez v. Bexar County Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir. 1996). Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." Lauderdale v. Tex. Dep't of Criminal Justice, 512 F.3d 157, 166 (5th Cir. 2007) (quoting Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)).

Our Title VII and section 1983 jurisprudence is well-settled:

Assuming a plaintiff has exhausted his administrative remedies, he may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence. We analyze cases built on the latter, like this one, under the framework set forth in McDonnell Douglas Corp. v. Green. Under that framework, the plaintiff must first establish a prima facie case of discrimination, which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.

McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007) (citations omitted).

---

[9] The section 1981 claims against these remaining state actors are properly considered under 42 U.S.C. § 1983, because section 1981 does not provide a separate cause of action against governmental entities. Oden, 246 F.3d at 462-3.

Accordingly, proof of an adverse employment action is a requisite element of the plaintiff's prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). We have historically held that "ultimate employment decisions," include only actions such as hiring, granting leave, discharging, promoting, or compensating. McCoy, 492 F.3d at 556 (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002)). Our discrimination jurisprudence has held that poor performance evaluations, unjust criticism, and being placed on probation do not constitute "ultimate employment decisions." Id.; Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) (abrogated by Burlington N. & Santa Fe Ry. Co v. White, 548 U.S. 53, 68 (2006)). However, the Supreme Court has recently explained that an adverse employment action in the retaliation context is somewhat broader. Burlington N., 548 U.S. at 68. The Court explained that a retaliation claim may rest on an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (citation and internal quotation marks omitted).

In her allegations that are not barred by prescription, King urges that she was discriminated against or retaliated against by: (1) Edmisten's change in attitude toward her; (2) the verbal reprimands of Edmisten (including one in front of a co-worker); (3) Reed's request that she dispose of empty pill packets; (4) being retained in an undesirable unit; (5) the recapture of salary paid between 2001 and 2003; (6) an average evaluation in 2003 which resulted in missing a merit salary increase; and (7) her alleged constructive discharge.[10]

Because King claims that "all defendants are liable to Ms. King with

[10] The incident in which King was reprimanded for wearing purple lipstick is not properly before this court. The 1997 missed salary increase is barred by res judicata, as discussed above.

11

respect to all causes of action, according to the just application of all laws to which Ms. King has resorted," we will assume in the summary judgment context that she claims all conduct to be retaliatory and discriminatory. Even taken in a light most favorable to King, allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation. See Burlington N., 548 U.S. at 68; see also Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000) (holding that criticism, oral threats, abusive remarks, and threats of termination did not rise to the level of adverse employment action). Even under the broadest conceivable reading of Burlington Northern, the only conduct remotely actionable under Title VII and 42 U.S.C. § 1983, that a reasonable employee would have found to be materially adverse, is the undesirable work assignment; the missed salary increase because of an average evaluation; and her "constructive discharge."

King failed to proffer any competent evidence of discrimination. There is no evidence that King's assignment to "Camp J" reflects treatment less favorable than a similarly situated individual outside her protected group. There is no evidence that her salary was any different than a similarly situated individual outside her protected group. There is no evidence that King was constructively discharged at all. See Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 771-72 (5th Cir. 2001) (setting forth factors to consider for constructive discharge). Even assuming. arguendo, that King made a prima facie showing of discrimination or retaliation, the summary judgment evidence utterly fails to carry King's burden to rebut the defendants' nondiscriminatory rationale for each alleged act. See McCoy, 492 F.3d at 557. Accordingly, summary judgment was appropriate.

E.    Fifth Amendment Claims

King alleges that the reduction of her salary to recapture the money paid to her following her October 2001 demotion is an unconstitutional taking, in violation of the Fifth Amendment.  It is well-settled that a constitutional remedy against a state actor under the Fourteenth Amendment does not lie where the state provides a meaningful post-deprivation remedy for the loss.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  We agree with the district court that King could have resorted to state remedies to seek recovery of her property or reimbursement of her loss.  See Marshall v. Norwood, 741 F.2d 761, 763 (5th Cir. 1984).  Accordingly, summary judgement was appropriate.

F.    Additional Objections

Within King's 71 issues presented for appellate review, she challenges various rulings by the magistrate and district court, including (1) the magistrate court's denial of her summary judgment motion as untimely, which was later reversed by the district court; (2) the grant of the defendants' motion to compel; (3) the court's decision to conduct an in camera review of evidence requested by King; (4) the denial of King's broad request for employment records for all doctors and nurses who worked within the facilities, co-workers, possible witnesses, certain employees and defendants, and additional requested discovery; (5) the magistrate judge's order striking portions of certain pleadings that include factual issues related to mediation; (6) the magistrate's award of attorney's fees and costs; and (7) the district court's alleged failure to properly consider King's Rule Seven response.  The thorough and patient consideration given each such issue by the district and magistrate courts compel us to find no abuse of discretion.  See Helicopteros Atuneros, 472 F.3d at 270.

G.    State Law Claims

With all federal claims properly dismissed, we conclude that the district court's decision to decline supplemental jurisdiction for King's claims under

unspecified "employment, contract and tort laws" of Louisiana was not an abuse of discretion. See Noble v. White, 996 F.2d 797, 799 (5th Cir. 1993) ("District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed."); 28 U.S.C. § 1367 (c)(3).

## III.

The district court admonished King,

> The time has come to put this litigation to an end. For plaintiff to re-file another case after she loses one or to file a case each time she disagrees with the decisions made by her employer without having the law and evidence to support her claims is a clear abuse of the judicial process. The plaintiff and her attorney are warned that plaintiff will be subject to sanctions if she continues to re-file claims which have already been decided previously or are not supported by the law and evidence. Title VII and section 1983 suits have specific requirements which must be established and proven by the plaintiff before a court may grant relief. However, filing frivolous suits which clearly do not come within the legal and factual standards required for relief and including allegations that can be said to amount to harassment and an expectation that by throwing so many allegations at the defendants with the hope that perhaps "something might stick" cannot be tolerated by the Court.

We concur. We further warn King's attorney that future filings of a similarly incomprehensible and insupportable nature as the ones in this case may result in sanctions. See FED. R. APP. P. 38.

For the foregoing reasons, the district court's grant of summary judgment as to all federal claims is AFFIRMED.