# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00605-CV

### Texas Health and Human Services Commission, Appellant

### v.

### Jose "Joe" Antonio Carrizal, Jr., Appellee

---

**FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-14-004803, THE HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

This is an appeal from the order of the district court of Travis County denying a plea to the jurisdiction in a whistleblower case. *See* Tex. Gov't Code §§ 554.001–.010 (Texas Whistleblower Act). Appellant is the Texas Health and Human Services Commission (the Commission); appellee is Jose "Joe" Antonio Carrizal, Jr. This Court will reverse the order of the district court and render judgment dismissing Carrizal's lawsuit.

In 2010, the Commission hired Carrizal, who has a law-enforcement background, as a special investigator for Child Protective Services, then a program subject to the Commission's authority. In that office, he conducted investigations into cases of abuse or neglect of children. In 2012, he joined the Commission's Office of Inspector General Internal Affairs where he investigated child-death cases.

On February 20, 2013, Carrizal sent a letter titled "Management Concerns," followed by a fifty-page brief, to Adrian Abrams, the Deputy Inspector General, his departmental

superior. The letter and brief referenced concerns Carrizal had about poor case management in the Internal Affairs Division.

In the seventeen months following service of the letter and brief, Carrizal was promoted (to police lieutenant in charge of the Vital Statistics Fraud Unit) and received two pay raises. According to Carrizal, however, all was not well at work during this time. In an affidavit filed in support of his response to the plea to the jurisdiction Carrizal asserted generally:

> Almost immediately following my submission [of the letter and brief to Abrams], I began to experience negative attitudes and retaliation, which included being ridiculed for filing the brief; having my reports scrutinized and rejected by management for allegedly not completing them appropriately (for the first time since I began working for [the Commission]); not receiving work credit for the child death investigations I completed; initially being passed over for a merit raise; receiving an inaccurate evaluation, which I contested via e-mail; being passed over for promotions.

In May 2014, Carrizal met with Captain Causey and Lieutenant Mazur concerning the transfer of one of Carrizal's cases. After the meeting commenced, Abrams appeared unannounced. Causey testified on deposition that upon Abrams's appearance, Carrizal stopped his presentation and began shouting that he would not be intimidated by Abrams. Causey was "taken aback" by Carrizal's behavior towards a "higher up." He had never seen anything like it. In Causey's view, Carrizal's action was very disrespectful and "borderline insubordination," conduct which would justify termination.

On the same day as the encounter between Abrams and him, Carrizal forwarded a copy of the February 20, 2013 letter and brief (previously sent to Abrams) to Doug Wilson, the Inspector General. About two months later, in July 2014, the Commission terminated Carrizal, allegedly for his inappropriate conduct at the May 2014 meeting.

2

Carrizal filed suit charging that his termination resulted from his reporting a violation of law in the February 20, 2013 letter and brief. *See* Tex. Gov't Code § 554.002(a) (creating standard for violation of Whistleblower Act). The Commission filed a plea to the jurisdiction asserting that Carrizal failed to establish causation between the claimed protected activity and his termination, and that, in any event, it terminated Carrizal for a legitimate non-retaliatory reason. Carrizal responded, asserting that the Commission's affirmative defense was pretextual. Upon hearing, the district court denied the plea.

To recover pursuant to the Whistleblower Act, as construed by the Texas Supreme Court, a plaintiff must establish that: (1) he is a public employee; (2) he made a report of a violation of law by the agency or a public employee; (3) he acted in good faith in making a report; (4) the report was made to an appropriate law-enforcement authority; and (5) he suffered retaliation because he made the report. *Texas Dep't of Human Servs. v. Hinds*, 904 S.W. 2d 629, 633 (Tex. 1995). To establish causation, a plaintiff must prove "but for" causation between the protected activity and the claimed adverse employment action. *Id*. at 635–36.

The Commission argues on appeal, as it did in district court, that Carrizal failed to establish causation between the claimed protected activity and his termination. In support of its argument, the Commission maintains that the seventeen-month gap between Carrizal's letter and brief to Abrams and his termination negates causation. We agree.

In other termination contexts, courts have concluded that time lapses shorter than seventeen months are insufficient to establish a causal link. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W. 3d 755, 790 (Tex. 2018) ("Temporal proximity is relevant to causation when it is 'very close.' [An eight-month] gap is so long as to be of little, if any, probative value."); *see also Jackson v. Honeywell Int'l Inc.*, 601 F. App'x 280, 287 (5th Cir. 2015) ("We have found a

3

five month period between the protected activity and the adverse employment action insufficient to establish a causal link.") (citing *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002)).

Carrizal argues that his May 2014 resubmission to Doug Wilson of the identical letter and brief previously sent to Abrams should restart the clock—i.e., that the link between the protected activity and the termination should be measured from May 19, 2014. We disagree. Temporal proximity is measured from the date on which the plaintiff first files a complaint, which in this instance was February 20, 2013. *See Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3rd Cir. 2014).

It is undisputed that Carrizal received a promotion and two pay raises in the seventeen months after he sent the February 20, 2013 letter and brief to Abrams. Carrizal attempts to counter these positive employment actions by claiming that he experienced "negative attitudes" and ridicule for filing the brief, as well as having his reports scrutinized and rejected by management for not completing them appropriately, and that he did not receive credit for investigations and received inaccurate evaluations. Similar complaints have been held not to constitute adverse employment actions. *See King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008). For the more serious claim (denial of a merit raise) we are not shown proof that this action was in retaliation for his complaint to Abrams. But more to the point, this claim is not relevant because the issue here is not whether Carrizal was retaliated against when he did not receive a raise in some unspecified time in 2013 or 2014 but instead, whether the February 20, 2013 letter and brief was the "but for" cause of his termination. Instead of being terminated, he received a promotion and two raises.

4

Finally, Carrizal claims on appeal that he had a separate claim based upon his April 14, 2014 complaint to Abrams concerning how the Commission handled its vital statistics. The Commission suggests that this claim is not properly before this Court, pointing out, correctly, that the "Cause of Action" section of Carrizal's petition does not mention a complaint to Abrams about the handling of vital statistics as being a basis for a termination claim. But Carrizal's vital-statistics complaint to Abrams is briefly mentioned in the twenty-page "Factual Background" section of his petition. Construing the petition liberally, *see Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W. 3d 217, 226 (Tex. 2004), we will consider Carrizal's vital-statistics complaint.

Carrizal's vital-statistics complaint does not support a whistleblower claim. For a complaint to be "protected activity" under the Whistleblower Act, it must be a good-faith report of a violation of law to an appropriate law-enforcement authority. *See* Tex. Gov't Code § 554.002(a). The "good faith" requirement of subsection 554.002(a) has both subjective and objective components: the employee must show that (1) he believed that the conduct reported was a violation of law and (2) his belief was reasonable in light of his training and experience. *Wichita Cty., Tex. v. Hart*, 917 S.W. 2d 779, 784 (Tex. 1996).

Carrizal alleged that he reported 70,000 unprocessed vital statistics to Abrams because he believed they constituted a violation of Texas Penal Code section 39.02. A required element of section 39.02 is that a public servant act "with intent to obtain a benefit or with intent to harm or defraud another." Tex. Penal Code § 39.02(a). Carrizal's complaint does not assert or allege that a public employee was acting to obtain a benefit or to defraud someone. Rather, Carrizal's complaint was about vital statistics being supplied in an insecure manner by "external agencies." Because the allegations do not meet the required elements of an abuse of official

5

capacity, it was unreasonable for Carrizal, a law-enforcement officer,[1] to believe that he was reporting a violation of law. Further, there is no allegation that the Inspector General of the Commission was an appropriate law-enforcement authority to receive complaints for abuse of official capacity premised on vital-statistics fraud.

We reverse the order of the district court and render judgment dismissing Carrizal's lawsuit.

---

Bob E. Shannon, Justice

Before Justices Baker, Kelly, and Shannon*

Reversed and Rendered

Filed: September 10, 2019

* Before Bob E. Shannon, Chief Justice (retired), Third Court of Appeal, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

---

[1] Carrizal, as a law-enforcement officer, is held to a higher standard when evaluating whether he was reasonable in his alleged belief. *See Harris Cty. Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 956 (Tex. 1996).