# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 11, 2023

Lyle W. Cayce
Clerk

———————

No. 22-30704

———————

Angela Melancon,

*Plaintiff—Appellant*,

*versus*

Lafayette General Medical Center, Incorporated, *doing business as Ochsner Lafayette General Medical Center*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:21-CV-3752

———————————————————————

Before Haynes, Engelhardt, *Circuit Judges*, and deGravelles, *District Judge*.[*]

Per Curiam:[*]

Plaintiff-Appellant Angela Melancon appeals the district court's dismissal of her amended complaint for failure to state a claim under Rule 12(b)(6). For the reasons that follow, we AFFIRM.

———————————

[*] United States District Judge for the Middle District of Louisiana, sitting by designation.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30704

## I.  FACTUAL AND PROCEDURAL HISTORY[1]

Angela Melancon began working at Lafayette General Medical Center (LGMC) as a security officer in 1992. Throughout her employment she steadily progressed in title and responsibility. By 2015, she served as a Security Operations Manager and was tasked with managing the security at five health care facilities and supervising and directing the activities of 45 security officers. Melancon received only positive job performance evaluations and consistently qualified for all available annual bonuses.

On March 4, 2021, Melancon met with an employee that she supervised, Lydia Bernard, to discuss various techniques to properly address an employee whose job performance is substandard. In response to Melancon's "coaching" efforts, Bernard, who is African American, aggressively moved into Melancon's personal space and responded by saying "Yessa massa, yessa massa! I will do whatever you tell me too [sic]." Melancon, who is white, reported Bernard to LGMC's Human Resource Department (HR), informing the HR representative that Bernard humiliated her when Bernard invaded her personal space and spoke to her as if she were a "slave owner." Bernard was initially to receive only a written reprimand for her behavior. When Melancon was told this, she "expressed her disappointment" to HR and, "[a]s a result of [her] continued effort to eliminate racial harassment in the workplace," Bernard eventually received a three-day suspension.

Thereafter, according to Melancon, "instead of applauding [her] for her efforts to end discriminatory mistreatment and/or harassment in the workplace, [LGMC] . . . subject[ed] her to workplace harassment and

_____

[1] The facts come from the amended complaint, which we must take as true given that our review is of a Rule 12(b)(6) dismissal.

threatened termination." Specifically, Melancon claims that her immediate supervisor, Donald Simon, and several of Melancon's staff, with Simon's approval, began openly harassing Melancon and complaining about her job performance. Simon and members of LGMC's security staff began regularly and routinely accusing Melancon of the following: unfair treatment of staff; bullying and workplace harassment; belittling members of the security staff regarding their body size and sexual preference; threatening staff with termination; causing workplace conflict; leaking confidential information; and engaging in retaliatory type conduct if directives were questioned by members of the security staff. On July 8, 2021, Simon issued Melancon a written reprimand accusing her of failing to "demonstrate several elements of [LGMC's] standards of behavior[,] which include supportiveness, etiquette, respect, and communication" in her response to a LGMC employee's report of being ill. This drove Melancon to obtain medical treatment and take a medical leave of absence from her employment so "she could handle the emotional stress that was intentionally inflicted upon her."

On October 25, 2021, Melancon filed a lawsuit against LGMC, asserting federal retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, as well as state law tort claims for intentional and negligent infliction of emotional distress. LGMC moved to dismiss under Rule 12(b)(6), but the motion was mooted by the district court's allowing Melancon to file, at her request, an amended complaint. Addressing LGMC's second Rule 12(b)(6) motion, the district court, adopting the magistrate judge's report and recommendation, dismissed Melancon's claims with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

An appellate court conducts a *de novo* review of a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6).

*Clyce v. Butler*, 876 F.3d 145, 148 (5th Cir. 2017) (citing *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015)). Dismissal under Rule 12(b)(6) is warranted if the complaint does not contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where the well-pleaded facts of a complaint "do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex re. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculation level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citation omitted).

## III. DISCUSSION

This appeal centers around whether the allegations set forth in the amended complaint regarding Melancon's federal retaliation and state law claims are sufficiently pleaded. Retaliation claims arising under Title VII and § 1981 are governed by the same "legal framework." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *DeCorte v. Jordan,* 497 F.3d 433, 437 (5th Cir. 2007)). To state a Title VII retaliation claim, a plaintiff must allege that (1) the employee participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *Lindsley v. TRT Holdings, Inc.,* 984 F.3d 460, 469 (5th Cir. 2021) (citation omitted). As clarified by the Supreme Court, an "adverse employment action" for purposes of retaliation claims, as opposed to discrimination claims, is a "materially adverse action." *Burlington N. &*

No. 22-30704

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). [2] That is, the seriousness of the harm or injury produced by the challenged action must be such that it "might have dissuaded a reasonable worker from [engaging in protected activity]." *Id.* (citation and internal quotation omitted). The Supreme Court chose the term "material adversity" because of the importance of "separat[ing] significant from trivial harms." *Id.* "Reasonable worker" reflects that an objective standard applies, so as to avoid "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 68-69. And the standard is phrased in "general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. [3]

Melancon maintains that the district court erred by failing to accept her facts as true and view her allegations "in a light most favorable to the plaintiff," as it is required to do in evaluating motions seeking dismissal under Rule 12(b)(6). We disagree. Federal law requires that an employer's action "might have dissuaded a reasonable worker from [engaging in

_____

[2] Although this circuit's cases continue to utilize the phrase "adverse employment action," it is important to note that, per *Burlington,* "materially adverse actions" for purposes of retaliation claims are *not* limited to employer actions and harm that impact employment and the condition of the workplace. 548 U.S. at 63. This is because Title VII's antiretaliation provision seeks to secure a nondiscriminatory workplace "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [Title VII's] basic guarantees." *Id.* And, of course, "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." *Id.* (citations omitted).

[3] For example, "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Burlington*, 548 U.S. at 69 (citing 2 EEOC 1998 Manual § 8, p. 8–14).

protected activity]" to constitute a "materially adverse action" necessary for an actionable retaliation claim, and the July 2021 written reprimand, standing alone, fails to satisfy this standard. *See Burlington*, 548 U.S. at 68. Specifically, the document purports, on its face, to respond to Melancon's handling of a matter involving an LGMC employee who had reported being ill, not Melancon's March 2021 report of Bernard's conduct to HR. Although the July 2021 reprimand states that "[a]ny future infractions may result in further disciplinary action up to and/or including termination of employment," Melancon has not alleged that the report itself gave rise to negative employment consequences. *See, e.g.*, *Thibodeaux-Woody v. Houston Comm. College*, 593 F. App'x 280, 286 (5th Cir. 2014) (citing *Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013)) (holding that an inconsequential reprimand, without more, does not constitute an adverse employment action); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (a single written warning, without evidence of consequences, is insufficient under *Burlington Northern*).

Although Melancon argues that her claims are premised on a series of events, not just the July 2021 written reprimand, her assertions that her colleagues made various accusations against her do not sufficiently fill in the gaps. For starters, Melancon does not allege that the accusations are untrue, exaggerated, or taken out of context. And, whether true or not, the allegations hardly constitute "well-pleaded facts." *See Iqbal*, 556 U.S. at 679. To the contrary, they are entirely conclusory, lacking even basic, but important, contextual information necessary to permit the court to infer more than mere possibility of misconduct. *See, e.g.*, *Holloway v. Dep't of Veterans Affairs*, 309 F. App'x 816, 819 (5th Cir. 2009) (a supervisor's criticisms made to co-workers about the plaintiff-employee militates against a finding of "material adversity"); *King v. Louisiana*, 294 F. App'x 77, 84-85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper

work requests, and unfair treatment do not constitute actionable adverse employment actions"); *Grice v. FMC Tech., Inc.*, 216 F. App'x 401, 407 (5th Cir. 2007) (alleged retaliatory incidents were either unsupported by the record or so "trivial" that they did not appear to be the sort of actions to dissuade a reasonable employee).

Though Melancon maintains that the district court required more factual specificity than is appropriate without the benefit of discovery, she offers no support for this assertion. In light of the nature of her allegations, she seemingly was already aware of much of the factual support for her claims and thus easily could have pleaded it. The district court likewise properly concluded that Melancon's allegations do not sufficiently allege the required causal connection between her protected activity (reporting Bernard's racial misconduct) and the written reprimand and other accusations of wrongdoing, given the approximately four months between the March 2021 report to HR and the July 2021 reprimand, and the lack of clarity regarding the chronology and other basic details of the other alleged events. *See, e.g.*, *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 921, 921 n.30 (5th Cir. 2015) (collecting cases) (temporal proximity must be "very close" to show causation).

Her state law claims do not fare better. To recover for intentional infliction of emotional distress, Melancon would have to establish that, *inter alia*, LGMC's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . ." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Melancon's allegations are insufficient to reach the level of egregiousness required for an intentional infliction of emotional distress claim. Insofar as Melancon purports to assert a claim for negligent infliction of emotional distress, her claim likewise fails. Louisiana law does not recognize an independent tort of negligent infliction of emotional distress except in limited circumstances, *see Doe v. Smith*, 2005-

No. 22-30704

0653, p.3 (La. App. 4 Cir. 7/13/05), 913 So. 2d 140, 142 (citing *Moresi v. State through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1096 (La. 1990)), and Melancon's allegations do not allege the existence of those circumstances.

The record reflects that Melancon only requested to amend her complaint once; no other request was made, and Melancon did not argue on appeal that the district court abused its discretion in denying another request. We thus agree with the district court's dismissal with prejudice of Melancon's federal retaliation and state law tort claims.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.