# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2013

No. 12-50338

Lyle W. Cayce
Clerk

JAIME HERNANDEZ

Plaintiff-Appellant

v.

MARTHA JOHNSON, Administrator, General
Services Administration

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:10-CV-476

Before STEWART, Chief Judge, and DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:*

Plaintiff Jaime Hernandez appeals the dismissal of his claims of retaliatory employment discrimination and violations of the Privacy Act on summary judgment. Based on our conclusion that the plaintiff either failed to state a prima facie case or failed to establish that his employer's articulated nondiscriminatory reasons are pretext, his claims of retaliation fail. In addition,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50338

we agree with the district court that Hernandez did not suffer any damages from the alleged violation of the Privacy Act. Accordingly, we affirm.

I.

Jaime Hernandez began his employment with General Services Administration (GSA) in 1990 and has been employed as a GS-13 Area Property Officer (APO) in San Antonio, Texas, since November 1994. In April 2008, H. Jan Faulkner became Chief of the Property Management Division and Hernandez's first-level supervisor. Faulkner's office was in Denver, Colorado, and she supervised Hernandez, who was stationed in San Antonio as well as three other APOs. Hernandez's territory was Texas and Louisiana. Faulkner remained Hernandez's supervisor until April 2009.

Hernandez initiated this action by filing suit against GSA in the Western District of Texas. He complains of several actions by Faulkner that he claims were made in retaliation for his activity filing Equal Employment Opportunity claims and in violation of the Privacy Act. Hernandez had filed a prior EEO claim in 2007 that was unsuccessful. Faulkner became aware of this in May 2008 when she asked Hernandez why he needed administrative leave and Hernandez told her that he was testifying in relation to his EEO claim.

Hernandez complains that a week after Faulkner learned of his 2007 EEO claim, Faulkner sent out "customer surveys" that solicited only negative feedback regarding his work ethics and performance. Faulkner states that she sent the surveys to customers of all of her APOs. On July 7, 2008, Hernandez states that Faulkner made a harassing phone call to him at home. This call took place on a work day and Faulkner wanted to ask a work-related question. During that conversation, she told Hernandez that she felt threatened by Hernandez telling her about his prior EEO activity (this refers to the May 2008 call in which Hernandez stated that his reason for administrative leave was for his EEO claim). On July 11, 2008, Hernandez filed his first informal complaint

against Faulkner for discrimination, hostile work environment and retaliation. In August 2008, Faulkner decided to stop the practice of assigning a personally dedicated government vehicle (GOV) for all of the APOs under her supervision, including Hernandez. Faulkner stated that this decision was made because the vehicles were being used far less than GSA Fleet Management standards. Hernandez states that this move, in conjunction with increased visit and presentation requirements, made it more difficult to do his job. During the period without a GOV, Hernandez had other transportation options available including GSA's short-term fleet rental program, private car rental and using a personal vehicle and obtaining mileage reimbursement from GSA. When GOVs were returned to the employees months later, Hernandez had to wait six months longer (until October 2009) than others to get his GOV. Faulkner was no longer his supervisor after April 2009, and Hernandez still had other transportation options available.

Hernandez also complains that his travel vouchers received extra scrutiny from Faulkner and were held longer than the five day period allowed for approval. The record indicates that some of Hernandez's travel vouchers were held for seven days instead of being processed in the customary two or three days. In October 2008, Hernandez filed a formal EEO complaint against Faulkner. In January 2009, Faulkner emailed a Letter of Counseling and Instruction to Hernandez identifying instances of his misconduct. This letter was not placed in Hernandez's official personnel file. However, it noted that it could be cited if disciplinary action were to be required later to indicate that he was counseled on the nature of the misconduct. At the same, Faulkner initiated a Record of Infraction based on a complaint about Hernandez from a non-GSA employee. Faulkner was required to initiate an investigation into the complaint and ultimately determined that it was unsubstantiated and no action was taken.

No. 12-50338

Hernandez's complaint also includes a claim for violation of the Privacy Act. In August 2008, Faulkner emailed two friends / former coworkers and mentioned that "Jaime" had filed an informal EEO complaint against her for creating a hostile work environment. The email did not state Jaime's last name, and neither recipient knew who he was. Hernandez learned of the disclosure two or three years after it occurred. In 2009, another GSA employee Susan Marquez opened the file of her own EEO complaint against Faulkner and found that Faulkner had attached Hernandez's affidavit from his own EEO complaint in her final Report of Investigation of Marquez's complaint. In September 2010, Faulkner told another coworker that all EEO suits against Faulkner were resolved in her favor and gloated that the agency found her not at fault in both Hernandez's case and Marquez's case. After Hernandez filed suit, Faulkner also gave updates about Hernandez's case in weekly staff meetings.

Hernandez claims that these events caused him to suffer from anxiety, depression, and digestive problems, beginning in 2008, and that as a result he required medical care.

The district court granted the GSA's motion for summary judgment on all claims. It found that, assuming Hernandez had shown a prima facie case of retaliation, the defendant provided evidence to support legitimate, nonretaliatory reasons for each alleged employment action and that Hernandez made no attempt to establish that the articulated reasons were merely pretext. On Hernandez's Privacy Act claims, the district court found that while Hernandez complained of ailments beginning in 2008, the disclosures he complains of were not discovered until 2010 or 2011. Accordingly, any Privacy Act violations were not the cause of his alleged damages and this claim failed for lack of a genuine issue of material fact on the existence of actual damages. Hernandez appeals.

4

No. 12-50338

## II.

We review the district court's decision on a motion for summary judgment de novo, applying the same criteria as the district court. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). This court may affirm the grant of summary judgment on any ground presented to the district court. *Conkling v. Turner*, 18 F.3d 1285, 1296 n.9 (5th Cir. 1994).

## III.

Hernandez's claim is that Faulkner retaliated against him for his prior EEO activity and for filing an EEO complaint against her. A plaintiff establishes a prima facie case of retaliation by showing: (1) that he engaged in activity protected by Title VII (in this case, prior EEO activity); (2) that an adverse employment action occurred; and (3) that there was a causal connection between the protected activity and the adverse employment action. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). To establish that an employment decision is a materially adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the challenged employment action. If the defendant does so, then the burden shifts back to the plaintiff to show that the defendant's stated reason is a pretext for retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

In this case it is undisputed that Hernandez filed EEO claims and that Faulkner became aware of this protected activity in May 2008. Faulkner would also have been aware of Hernandez's later EEO complaints against her. The

5

district court assumed that Hernandez had made a prima facie case of retaliation. On appeal Hernandez argues that he did state a prima facie case, and that the district court erred in holding that he failed to rebut the legitimate reasons of the defendant for the actions taken with evidence of pretext. GSA seeks to uphold the district court's finding on pretext and also argues that Hernandez did not state a prima facie case of retaliation because he failed to establish that an adverse employment action occurred.

Hernandez complains of five allegedly retaliatory employment decisions that he claims were materially adverse employment actions: (1) that his GOV was removed and, when that decision was rescinded, he had to wait six months longer than other APOs to receive his GOV; (2) that Faulkner nit picked his travel vouchers and delayed approving them for payment; (3) that Faulkner sent out customer surveys that were designed to solicit only negative information; (4) that Faulkner made a harassing phone call to him at home and told him that she felt threatened by his EEO activity and the possibility that he might file a claim against her (Hernandez understood this as a threat that he could be fired); and (5) that Faulkner issued a Letter of Counseling and Instruction to him based on his job performance and a Record of Infraction based on a complaint from a non-GSA employee. Each of these claims fails either because they are not a materially adverse employment action and/or because GSA stated a legitimate reason for the action and Hernandez failed to present corresponding evidence of pretext.

On the issue of pretext, Hernandez's position in general is that the district court should discredit the testimony of Faulkner that articulated the nonretaliatory reasons for the challenged employment actions because she is not a disinterested witness. This argument misapprehends the *McDonnell Douglas* burden shifting framework. If we assume that Hernandez stated a prima facie case, then the burden is on the employer to articulate some legitimate,

nonretaliatory reason for the challenged employment action. This testimony, as a practical matter, often comes exclusively from the accused discriminatory official who is the one with knowledge regarding the reasons for the decision. Testimony from "interested" management witnesses is routinely used by defendant employers to articulate a nonretaliatory or nondiscriminatory reason for the employment actions. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007); *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557. The plaintiff then bears "the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.* (citations omitted).

*(1) Removal of GOV*

Turning to the specific employment actions Hernandez complains of, Hernandez argues first that Faulkner retaliated against him by taking away his GOV and then making him wait six months longer than other APOs when the decision was made to return them. Faulkner testified in deposition that she removed the GOVs from all APOs under her supervision because of budgetary constraints. She stated that she did not believe it was economical to dedicate a vehicle to Hernandez personally, when Hernandez's historical usage was far lower than GSA Fleet Centers requirements. Hernandez questions this reason because Faulkner did not conduct a cost benefit analysis. Also, he asserts that his opinion, which others agreed with, that this was a bad management decision was confirmed when the decision was rescinded.

Faulkner's stated reason is not pretext simply because it may not have been the right decision. "Whether the employer's decision was the correct one,

or the fair one, or the best one is not a question within the jury's province to decide. The single issue . . . is whether the employer's [decision] was motivated by discrimination." *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999). To the extent Hernandez's claim rests on the fact that he was the last to have his GOV returned, we note that the return of his GOV in October 2009 occurred long after Faulkner was no longer his supervisor after April 2009. In the alternative, the loss of a personally assigned vehicle is not a materially adverse employment action. *See Wheeler v. BNSF Ry. Co.*, 418 F. App'x 738, 750 (10th Cir. 2011); *Roney v. Ill. Dept. of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007). GSA provided other transportation means to Hernandez including rental cars and reimbursement for use of his private vehicle.

*(2) Delay of Travel Vouchers*

Hernandez established through the deposition testimony of Susan Marquez that his travel vouchers received extra scrutiny from Faulkner and that "a couple" of his vouchers were not processed for seven days, instead of the customary two or three days. Although Hernandez asserted that this could require him to pay his government credit card balance out of his own pocket if reimbursement were delayed, he presented no evidence that this ever occurred. We decline to find that this kind of petty annoyance is a material adverse employment action. *Burlington Northern*, 548 U.S. at 69.

*(3) Customer Surveys*

Faulkner sent surveys to Hernandez's customers that appear to request only negative information about APOs. Faulkner responded to this claim by stating that she sent the challenged surveys to all customers of each of the four APOs under her supervision, which indicates that the surveys were not targeted toward Hernandez. Hernandez presents no evidence that this was pretextual. The fact that certain customers questioned the surveys does not rebut Faulkner's explanation. Hernandez points to the affidavit of Ramon Benavides,

No. 12-50338

Jr. who received the survey regarding Hernandez and "found it strange that it did not include other GSA representatives that I had interactions with throughout the United States concerning excess property." Hernandez argues that this statement undermines Faulkner's claim that she sent out surveys about all of the APOs under her supervision. We disagree. There is no evidence in the record that the "other GSA representatives" that Mr. Benavides had interactions with were under Faulkner's supervision.

*(4) Harassing Phone Call*

Hernandez states that Faulkner called him at home and stated that she felt Hernandez was threatening her by telling her about his prior EEO activity. Hernandez argues that this phone call was a threat not to file an EEO claim against Faulkner and a threat that he could be fired because Faulkner had stated on another occasion that she wasn't afraid to fire people. We find that this call was not a materially adverse employment action. We have found an adverse employment action when a supervisor made multiple statements to the plaintiff urging him to drop his EEO complaint, stating that no one in the office would testify in his favor, and threatening that if he proceeded with the complaint he would show him what he was up against. *Fallon v. Potter*, 277 F. App'x 422, 428-29 (5th Cir. 2008). However,

> a supervisor's mention, or even criticism, of an employee's EEO complaints does not itself constitute such "material adversity" that would "dissuade a reasonable worker from making or supporting a charge of discrimination." See *Burlington Northern*, 548 U.S. at 68. For example, in *Jones v. Johanns*, 264 F. App'x 463 (6th Cir. 2007), the Sixth Circuit held that a supervisor's letter to the plaintiff warning him to stop discussing his EEO complaints during business hours and threatening "official disciplinary action" if he failed to stop did not, "as a matter of law, constitute materially adverse actions," *id.* at 469. Indeed, courts have even held that a supervisor's statements to a plaintiff's co-workers that he would "get rid of" the plaintiff because he was "creating problems," *Thomas*, 438 F. Supp. 2d at 366, and "[b]admouthing or being mean to an

9

No. 12-50338

employee within the workplace," *Roldan v. Chertoff*, No. 04CV2515, 2006 U.S. Dist. LEXIS 78574, 2006 WL 4632503, at \*12 (S.D. Cal. Oct. 19, 2006), are not materially adverse actions capable of sustaining a retaliation claim.

*Holloway v. Dep't of Veterans Affairs*, 309 F. App'x 816, 819 (5th Cir. 2009). Based on this framework, Faulkner's single statement that was not even a direct threat was not a materially adverse employment action.

*(5) Letter of Counseling / Record of Infraction*

Similarly, the Letter of Counseling was not an adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (letter of counseling, letter of reprimand, and unsatisfactory performance review were not adverse actions); *DeHart v. Baker Hughes Oilfield Operations, Inc.,* 214 F. App'x 437, 442 (5th Cir. 2007) (single written warning insufficient to dissuade reasonable employee from reporting discrimination). In addition, Hernandez offered no evidence of pretext with regard to either the Record of Infraction or the Letter of Counseling. Faulkner was required to investigate the third party complaint. There is no allegation that Faulkner instigated the third party complaint or that the reported infractions were inaccurate.

We also reject Hernandez's suggestion that these events considered cumulatively are an adverse employment action. The district court correctly granted summary judgment in favor of the GSA on Hernandez's retaliation claims.

IV.

In order to establish a violation of the Privacy Act, Hernandez must present evidence of the following: (1) the information disclosed was a record in a system of records, (2) the agency disclosed the information, (3) the disclosure had an adverse effect on him, and (4) the disclosure was wilful. *Jacobs v. Nat'l Drug Intelligence Ctr.*, 423 F.3d 512, 515 (5th Cir. 2005). The civil remedies

No. 12-50338

provision provides that the United States will be liable for any intentional or willful failure to comply with the Act for "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000." *F.A.A. v. Cooper*, 132 S.Ct. 1441, 1449 (2012) (quoting 5 U.S.C. § 522a(g)(4)(A)). *Cooper* recently held that "actual damages" must be based on pecuniary harm, and cannot be premised on mental or emotional distress. *Id.*

Hernandez's Privacy Act claims are based on four disclosures: (1) a 2008 email from Faulkner to a friend discussing the EEO claim, but only identifying the plaintiff as "Jaime"; (2) the placement by Faulkner in 2009 of Hernandez's EEO affidavit in the EEO file of Marquez; (3) the 2010 disclosure by Faulkner to Hernandez's co-worker Honley that all EEO suits were resolved in her favor; (4) updates by Faulkner in staff meetings in 2010 regarding pending EEO suits.

The district court found that although Hernandez complained of damages dating back to 2008, he also indicated in his deposition that he was not aware of any of the disclosures until either 2010 or 2011 when he was notified by his attorney. Accordingly, no reasonable jury could find that the adverse effects Hernandez suffered were caused by these disclosures. We agree.

In addition, the 2008 disclosure is not actionable because it identified Hernandez only by his first name and neither recipient knew who "Jaime" was. Hernandez disclosed his belief that he was being unfairly subjected to a hostile work environment and his intention to file an EEO claim to Marquez, Honley and four other individuals who worked for GSA. In October 2008, Hernandez asked Marquez to be a witness in his EEO complaint. Because Hernandez's EEO activity was fairly well known based on his own disclosures, Hernandez cannot show that any disclosure by Faulkner had an "adverse effect" on him. *Gowan v. United States Dep't of the Air Force*, 148 F.3d 1182, 1194 (10th Cir. 1998) (Air Force's disclosure of information to Wyoming State Bar that plaintiff

11

faced court martial charges did not have adverse effect on plaintiff within meaning of Privacy Act because plaintiff had disclosed the same information to the same entity).

Hernandez also claims that his non-selection for two positions he interviewed for were caused by the alleged violations of the Privacy Act. In August 2008, Hernandez interviewed for a position in El Paso, Texas. In September 2008, he interviewed for a position in Albuquerque, New Mexico. In both instances a panel of three GSA supervisors interviewed multiple candidates and ranked them. Hernandez was not selected for either position because he was not one of the top three candidates based on aggregate scores by the respective panels. There is no evidence that Faulkner was aware that Hernandez applied for or was interviewing for these positions or that any panel members contacted Faulkner. None of the El Paso panel members were aware of Hernandez's EEO activity, and only one of three of the Albuquerque panel members knew about Hernandez's 2002 EEO claim and did not disclose it to the other panel members. This argument is without merit.

## V.

For the foregoing reasons, the judgment of the district court dismissing Hernandez's claims on summary judgment is AFFIRMED.