# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20738

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2014

Lyle W. Cayce
Clerk

MARGARET D. THIBODEAUX-WOODY,

Plaintiff - Appellant

v.

HOUSTON COMMUNITY COLLEGE,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:11-CV-4081

Before SMITH, BARKSDALE, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:*

Plaintiff-Appellant Margaret D. Thibodeaux-Woody ("Woody") appeals a summary judgment in favor of Defendant-Appellee Houston Community College ("HCC"). Because we conclude that genuine disputes of material fact remain with respect to Woody's Equal Pay Act and related Title VII sex discrimination claims, we REVERSE the judgment with respect to these claims. In all other respects, we AFFIRM the judgment.

I.

Woody, who is female, began working as a part-time, adjunct faculty

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

member for HCC in 1998. In February 2008, Woody applied and interviewed for one of HCC's two open program manager positions. Woody interviewed with Joseph Little, who would be her supervisor were she to receive the job. Little informed Woody that the position paid $41,615 per year. Woody alleges that during the conversation, she informed Little she would like to negotiate for more, but Little told her the stated salary was the maximum amount HCC was willing to offer and there could be no negotiations for a higher salary.[1] HCC contends that Little was not the appropriate salary negotiator, but Little did not forward Woody's request to negotiate to any such authorized person. In March 2008, Don Washington, HCC's Director of Employment Services, called Woody to offer her the position, and, in reliance on Little's admonition, she accepted the position later that month without any salary negotiations.

Around the same time, Washington offered Alan Corder, a male, the other program manager position at the same salary. Corder, however, counteroffered for $60,000. Though Washington lacked authority to negotiate Corder's salary, he forwarded the request to the proper authorities in the human resources department ("HR"). HR responded to Corder's counteroffer with an offer of $52,000, which Corder accepted.

There is no evidence that Corder was told at any point—during his interview or at the time of the offer—that he could not negotiate. To the contrary, Woody presented evidence that HCC had an informal policy that permitted negotiation. Woody further presented evidence that Little knew or should have known about the policy before Woody accepted her offer in March 2008, though Little, like Washington, lacked authority to negotiate salaries.

---

[1] HCC objects to Woody's affidavit as hearsay. However, the statements asserted in Woody's affidavit are admissions of a party opponent and thus are admissible as summary judgment evidence. FED. R. EVID. 801(d)(2).

Indeed, Little was included on e-mails regarding Corder's salary negotiation but kept quiet about Woody's request to negotiate.

Corder and Woody began working in their new positions on April 16, 2008. Approximately one year later, Woody learned that Corder was paid more than she. She contacted people in HR to discuss the discrepancy in June 2009. They informed her that Corder had negotiated for more money at the time he was hired and that there was nothing they could do to ameliorate the disparity. In 2011, Woody sent a demand letter to HCC. When that produced no results, Woody filed a charge with the Equal Employment Opportunity Commission ("EEOC") in June 2011.

Woody alleges that Little made several comments after she was employed as a program manager that indicate a bias against women. For example, she alleges that Little referred to her as a "princess," "dingy," and "blonde." On separate occasions, he allegedly told her she reminded him of his mother and suggested she rely on her husband's income.

Throughout the time she worked at HCC, Woody and Corder received annual standard pay increases. Woody also received annual performance evaluations. Woody received overall ratings of "exemplary," the highest category, for the years 2008–2009 and 2009–2010. In the 2010–2011 review, Woody received a "professional" rating, which is one level below "exemplary." Woody also alleged that she was written up in July 2011 for inconsequential issues.

Woody received a "right to sue" notice in September 2011, and sued on November 22, 2011. In her complaint, Woody accused HCC of violating the Equal Pay Act ("EPA") and Title VII by paying her less than Corder; she also accused HCC of retaliation. HCC asserted Corder's negotiations as a legitimate, nondiscriminatory reason for the wage disparity.

The parties moved for summary judgment, Woody on her EPA claim and

No. 13-20738

HCC on all of Woody's claims.  The district court granted summary judgment in favor of HCC as to each of Woody's claims.  Woody timely appealed.

## II.

We review a summary judgment de novo.  *See E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A disputed fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).  "When parties file cross-motions for summary judgment, we review each party's motion independently . . . ."  *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (citation and quotation marks omitted).

### A.  *Wage Discrimination*

Woody claims that HCC violated the EPA and Title VII by paying Corder more than she was paid, despite their similar qualifications.  To state a prima facie case for wage discrimination under the EPA, a plaintiff must show that the employer pays different wages to men and women, the employees perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility," and the employees perform their jobs "under similar working conditions."  29 U.S.C. § 206(d)(1); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).  Once the employee has carried her burden to show unequal wages, "the burden shifts to the employer to show that the differential is justified under one of the [EPA's] four exceptions," only the last of which is relevant here.  *Corning Glass Works*, 417 U.S. at 196.  An employer is not liable under the EPA if it shows that the pay differential is "made pursuant to . . . a

4

differential based on any other factor other than sex." § 206(d)(1).

HCC agrees that Woody has made a prima facie case of wage discrimination under the EPA. However, HCC argues that the difference in Woody and Corder's salaries was due to their different approaches to salary negotiation, which it contends is a "factor other than sex."[2]

Woody argues that negotiation is not a proper "factor other than sex" because men and women's different success in negotiation may reflect exactly the sort of inequality Congress intended the EPA to cure. To resolve the matter before us, we need not—and do not—decide whether negotiation is a proper "factor other than sex." The "factor other than sex" defense applies only where "pay differentials are based on a *bona fide* use of 'other factors other than sex.'" *Washington Cnty. v. Gunther*, 452 U.S. 161, 170 (1981) (emphasis added). A practice is not a bona fide "factor other than sex" if it is discriminatorily applied. *Cf. Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1047 (5th Cir. 1973) (rejecting employer's argument that a training program was a "factor other than sex" that justified higher salaries for male employees where no female employee had ever been included in training program).

Woody avers that she attempted to negotiate, but Little told her she could not. In contrast, Corder's counteroffer was elevated to the proper authority. Woody has also shown evidence that suggests Little knew this information to be false, at least before Woody accepted her offer, but did not attempt to correct his earlier misstatement regarding the availability of

---

[2] Though HCC presented only its negotiation defense to the district court, HCC now argues on appeal that HR's consideration of Corder's qualifications warranted the higher salary. The evidence shows that HR discussed Corder's qualifications without reference to Woody's. "[T]he subjective evaluations of the employer cannot stand alone as a basis for salary discrimination based on sex," particularly where there is no evidence that the employer compared the male candidate with the female candidate. *Brennan v. Victoria Bank & Trust Co.*, 493 F.2d 896, 902 (5th Cir. 1974).

negotiation.  HCC responds that Woody also spoke with Washington and had an equal opportunity to negotiate.   It also argues that Little's alleged statements to the contrary are immaterial because he did not have the authority to negotiate Woody's salary.

Based on our review of each of the cross-motions for summary judgment on the EPA claim, however, a reasonable factfinder could reject HCC's defense on the ground that it discriminatorily applied its negotiation policy.  *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) ("But because the moving party has the burden of proof under this scenario, the nonmoving party may also defeat the motion by showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party.").  As there remain genuine disputes of material fact in this case, the grant of summary judgment to either party was improper.[3]  We therefore conclude that the district court erred in granting summary judgment in favor of HCC on this claim.

For the same reason, the district court erred in granting summary judgment regarding Woody's Title VII sex discrimination claim to the extent that decision was also based on HCC's negotiation defense.  "Under the [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] framework, a plaintiff must first establish a prima facie case of sex discrimination.  The employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. . . .  Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the *McDonnell Douglas* framework dissipate, and the plaintiff bears the ultimate burden of

---

[3] As there exist genuine disputes of material fact as to whether negotiation was available to Woody, she is also not entitled to summary judgment in her favor on her EPA claim.

persuading the trier of fact that the defendant engaged in intentional discrimination." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (internal citations omitted). Title VII incorporates the same affirmative defenses as the EPA, including the "factors other than sex" defense. *See* 42 U.S.C. § 2000e-2(h); *Gunther*, 452 U.S. at 171.

Having determined that HCC's negotiation defense precluded Woody's EPA claim, the district court ruled that it also precluded her Title VII claim because "[s]ex discrimination claims under Title VII have the same defenses to wage disparity claims as the [EPA]." *Thibodeaux-Woody v. Houston Comm. Coll.*, No. 4:11-cv-4081, slip op. at 3 (S.D. Tex. Nov. 22, 2013). As discussed, Woody has raised a genuine dispute of material fact as to the validity of HCC's defense. If negotiation is not available to persons of both sexes, it cannot be a legitimate, *nondiscriminatory* reason for a pay differential. Thus, the district court also erred in granting summary judgment on this claim to the extent it was based upon the pay differential.[4]

### B. Retaliation

With respect to Woody's retaliation claim, we agree with the district court's decision that Woody fails to present summary judgment evidence supporting a prima facie case of retaliation. To establish a prima face case of

---

[4] Unlike an EPA claim, a wage discrimination claim under Title VII requires a showing of discriminatory motive. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 & n.15 (1977). We view Little's alleged statements to Woody (such as calling her "dingy," "princess," and "blonde") as evidence in support of her claim of discriminatory motive. To the extent that Woody asserts a claim for sex discrimination based on a hostile work environment, however, we conclude these statements are not "sufficiently severe or pervasive to alter the conditions of [Woody's] employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citation and internal quotation marks omitted). Thus, we affirm the summary judgment of Woody's Title VII claim to the extent it is based on a hostile work environment. *See Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) ("Even if this court disagrees with the reasons given by the district court, it may affirm a grant of summary judgment on any grounds supported by the record and presented to the court below.").

retaliation under either Title VII or the EPA, Woody must show: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). In the context of a retaliation claim, an adverse employment action is an action that is "materially adverse" that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). If Woody makes this showing, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

Woody claims that after she informed HCC of her concerns regarding the salary disparity, a protected activity, they retaliated against her in three ways: (1) her salary was not adjusted to the same level as Corder's salary; (2) her evaluations went from "exemplary" to "professional," one level lower; and (3) she was reprimanded in July 2011 for allegedly inconsequential issues. None of these actions supports a prima face case for retaliation.

Woody first argues that HCC retaliated against her by continuing to pay her a lower salary than Corder after she complained about the disparity. The denial of a pay increase can be an adverse employment action. *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). However, Woody does not present evidence that supports a "but for" "causal link" between her complaint and HCC's denial of the pay increase. *Banks*, 320 F.3d at 575; *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (requiring "but for" causation for retaliation cases under Title VII).

The "professional" rating in her 2010–2011 performance review and the

July 2011 written reprimands also do not support Woody's claim. Though an employment action need not be an "ultimate employment decision" to be considered adverse, it must be something that would "have dissuaded a reasonable worker from making or supporting a charge of discrimination," *White*, 548 U.S. at 67–68 (citation and internal quotation marks omitted). Woody has not established that either action is an adverse employment action, as she must to establish a prima facie case. Woody did not allege that a "professional" rating, rather than an "exemplary" rating, would have a negative effect on her position or salary. A less than optimal performance review, without more, is not something that would have discouraged Woody from asserting a charge of discrimination. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) ("[P]erformance reviews typically constitute adverse actions only when attached to financial harms.").[5]

Similarly, Woody fails to proffer evidence showing that the "write-up" in July 2011 is an adverse employment action. While a reprimand can serve as the basis for a retaliation claim under certain circumstances, *see Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (finding that a reprimand supported a retaliation claim where the supervisor previously stated he would find a way to fire plaintiff), we have held that a written reprimand, without evidence of consequences, does not constitute an adverse employment action. *See Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013); *DeHart v. Baker*

---

[5] Even if the performance review constituted an adverse employment action, Woody fails to show causation. Woody spoke with HR regarding her pay in June 2009. However, in the performance review for 2009–2010, which followed her conversation with HR, she received an overall "exemplary" rating. Moreover, she did not file her complaint with the EEOC until after the deadline of completion for the 2010–2011 evaluation. Thus, Woody does not establish that her complaints regarding her salary two years earlier caused the lesser, but still good, 2010–2011 performance review. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that a three-month or four-month period may be close enough to establish a causal nexus but holding that a twenty-month period was not).

No. 13-20738

*Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007).[6] Woody has failed to meet the necessary threshold.

### III.

Accordingly, we REVERSE the judgment as to Woody's EPA and Title VII claims based upon the pay differential and AFFIRM the judgment in all other respects. We REMAND the case for further proceedings consistent with this opinion.

---

[6] Although *Hernandez* and *DeHart* are not "controlling precedent," they "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).