## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 24, 2018

Lyle W. Cayce
Clerk

No. 17-30793
Summary Calendar

EIAD ODEH,

> Plaintiff - Appellant

v.

CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE,

> Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-793

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

After Baton Rouge officials decided to reorganize the City-Parish's Department of Public Works, Eiad Odeh was transferred to a new position with Emergency Management Services (EMS). Unhappy with the transfer, Odeh resigned his position with the City-Parish. Soon thereafter he filed this lawsuit asserting a variety of claims. The district court granted the defendant's motion for summary judgment. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30793

## I.

Odeh had worked for the City-Parish for a few years when he was promoted to Special Assistant to the Director of Public Works in 2005. But the City-Parish later decided to split Public Works into six departments, which eliminated both the Director and Special Assistant positions. So in 2013 the City-Parish transferred Odeh to a technical position with EMS, in which he would oversee databases and perform IT tasks. In that new position, Odeh received the same pay and benefits. At the start of the 2014 budget cycle, the City-Parish requested that Odeh "officially apply" for this position, so it could pay him out of EMS's budget. Odeh refused. He instead requested a transition back to his position in Public Works—a position that no longer existed. By the middle of that year, Odeh took leave under the Family and Medical Leave Act. He never returned to work. Odeh resigned in October 2014.

In the lawsuit he then filed, Odeh alleged numerous instances of discrimination throughout his tenure. For example, he said the City-Parish passed him over for a promotion to information systems director and failed to consult him about the Public Works reorganization. He also cited several occasions when coworkers made derogatory comments about Odeh being of Middle Eastern descent. And the City-Parish reprimanded Odeh for adding a layer of security to another employee's computer without authorization from his superiors. But there is no indication that the reprimand was accompanied by any change in Odeh's employment status; in fact, the City-Parish issued the reprimand around the same time it requested that Odeh formally apply to his new position with EMS.

Apart from that alleged discrimination, Odeh also contends that the City-Parish has, since 2015, used a traffic signs and signals database that he created during his employment. It does so, he emphasizes, without his consent and without compensating him.

2

No. 17-30793

Odeh filed suit in December 2014, asserting discrimination, harassment, defamation, and whistleblower claims under state law. After the City-Parish removed the case to federal court, Odeh amended his complaint to include federal section 1983 claims.[1] The district court granted the City-Parish's motions for summary judgment and dismissed Odeh's claims.[2]

## II.

We first address whether the district court erred in granting the motion for summary judgment on Odeh's misappropriation of intellectual property, copyright infringement, and conversion claims asserted under section 1983.[3] These claims involve Odeh's allegations that the defendant copied the source

---

[1] Although Odeh did not seek remand, the district court lacked jurisdiction at the time of removal because he had alleged only state law violations. Even though jurisdiction is ordinarily evaluated at the time of removal, such a defect may be cured when federal jurisdiction is established by the time final judgement is entered. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 73 (1996); *see Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 584 (2004) (Ginsburg, J., dissenting); *see also Camsoft Data Sys., Inc. v. S. Electronic Supply, Inc.*, 756 F.3d 327, 336–38 (applying *Caterpillar* when jurisdiction is cured by the addition of a federal claim). We therefore have jurisdiction.

[2] Odeh does not appeal the dismissal of his defamation or invasion-of-privacy claims. He also does not sufficiently challenge the dismissal of his whistleblower claims on appeal. Even though he asserted that "he was ultimately retaliated against after discovering and reporting violations of law which were being committed by the City/Parish," Odeh did not further develop that challenge in the argument section of his opening brief. An appellant's argument must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies." Fed. R. App. P. 28(a)(8)(A); *see United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005) ("Our cases make it clear that an argument not raised in appellant's original brief as required by [Rule 28] is waived."). Even if Odeh did not forfeit that challenge, his whistleblower claims would be unavailing. As the district court noted, Odeh failed to present evidence that the City-Parish committed actual legal violations, that he reported those violations, or that he suffered reprisals for doing so.

[3] Odeh argues that his amended complaint contained misappropriation, copyright, and conversion claims independent of section 1983. The complaint is not clear on this score. But in his opposition to summary judgment, Odeh repeatedly categorized these claims as section 1983 violations even when the defendant tried to treat them as freestanding claims. So he is estopped from now treating them as independent claims. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999) (noting that absent "extraordinary circumstances" this court will not permit parties "to raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory").

code for his company's "Commercial Building Inspector" software and continued to use the traffic database after he tried to withdraw permission. To show the City-Parish is liable under section 1983, Odeh must prove that (1) an official policy (2) promulgated by Baton Rouge (3) was the moving force behind the violation of a federal right. *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). The section 1983 claims alleging misappropriation and conversion fail for a reason even more fundamental than the one the district court cited: they are rights created under state law, but section 1983 is only a vehicle for enforcing rights "secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Aujla v. Hinds Cty.*, 61 F. App'x. 917 (5th Cir. 2003). As to the one federal right Odeh does invoke, the one protecting against copyright infringement, the district court correctly recognized that Odeh failed to identify the official policy or custom that is necessary to establish section 1983 liability against a public entity. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Odeh's section 1983 claims therefore fail.

## III.

Odeh also argues that the district court erred in granting summary judgment as to his national origin discrimination claims. Though he brought these claims under state law, Louisiana courts look to federal Title VII caselaw when interpreting Louisiana antidiscrimination statutes. *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 415 (5th Cir. 2018) (recognizing that fact and applying Title VII standards to plaintiff's state law retaliation claim). To establish a discrimination claim under Title VII, the plaintiff must have suffered an adverse employment action. *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). Actions that do not "affect job duties, compensation, or benefits" are not adverse. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575

No. 17-30793

(5th Cir. 2003)).  That is because they are not "*ultimate employment decisions* such as hiring, granting leave, discharging, [and] promoting."  *Id.* (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)).

The reprimand and transfer were not adverse employment actions.[4]  The written reprimand amounted to little more than a notation in Odeh's employment record, accompanied by a warning that "[a]ny further incidents of this nature in the future will result in a more severe disciplinary action."  This is not an ultimate employment decision.  *See Thibodeaux-Woody v. Hous. Cmty. Coll.*, 593 F. App'x 280, 286 (5th Cir. 2014) ("[A] written reprimand, without evidence of consequences, does not constitute an adverse employment action.").  As for the transfer to another position, that amounts to an adverse action only if the change makes the employee's job worse.  *Pegram*, 361 F.3d at 283; *see Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 394–95 (5th Cir. 2002) (finding that plaintiff was not constructively discharged, and therefore suffered no adverse action, because the position he was transferred to afforded the same salary, was not a demotion, did not involve menial or degrading work, and entailed comparable responsibilities).  Odeh received the same pay and benefits at EMS as he did at Public Works, and he served in a similar role.  His view that the reassignment resulted in a less desirable position does "not lift him over the hurdle of summary judgment for the purpose of adverse employment action" when a reasonable person would not view the transfer as a demotion.  *Pegram*, 361 F.3d at 283.

---

[4] The district court correctly found that the other alleged incidents of discrimination occurred before the prescription date and were not subject to Odeh's continuing violation argument.  *See* La. R.S. § 23:303(D) (outlining a maximum prescription period of 18 months); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 114–15 (2002) (holding that discrete instances of discrimination, as opposed to continuing violations, are only actionable if they occur within the appropriate time period); *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) (same).

## No. 17-30793

A constructive discharge is an adverse employment action—the point of that label being that it is akin to the paradigmatic adverse action of termination—but Odeh has not shown that is what happened to him. A constructive discharge occurs when an employer intentionally makes working conditions so intolerable that a reasonable employee would be forced to resign. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008). In assessing those working conditions, our court considers whether the plaintiff was demoted, paid less, reassigned to menial or degrading work, subject to employer harassment or humiliation that was calculated to encourage the resignation, or asked to resign. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir 2008). Odeh cannot point to any of these situations that can lead to working conditions being so intolerable that a resignation will be treated as a termination. *See Stover*, 549 F.3d at 992 (finding no constructive discharge because the evidence showed only that plaintiff encountered difficulties in dealing with her supervisor and was disgruntled about a high-level administrator receiving greater benefits); *see also Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 339 (5th Cir. 2014) (expressing skepticism that a plaintiff on medical leave for two months prior to his resignation could be subject to working conditions so intolerable that a reasonable person would feel compelled to resign).

Because Odeh was not subject to an adverse employment action, we affirm the dismissal of his discrimination claims.

## IV.

Lastly, we address whether Odeh's hostile work environment claims can survive summary judgment.[5] To prevail on a hostile work environment claim,

---

[5] Odeh arguably fails to raise this claim on appeal. But giving him the benefit of the doubt as a *pro se* litigant, we address it here.

No. 17-30793

Odeh must show, among other things, that he was subject to harassment based on his national origin that affected a term, condition, or privilege of his employment. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). The conduct alleged must be objectively hostile and abusive. *Id.* Odeh's evidence does not create disputed issues as to whether the reprimand or transfer was based on his national origin; affected a term, condition, or privilege of his employment; or would have been offensive to a reasonable person. Additionally, offhand comments and isolated incidents, unless "extremely serious," do not suffice to alter the terms and conditions of employment. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). This claim fails.

***

The judgment of the district court is AFFIRMED.

7